*Decision will be entered under Rule 50.*

MARY RYERSON FROST, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 88981. Promulgated December 16, 1938.

*Kenneth Howes, Esq.,* for the petitioner.
*James D. Head, Esq.,* and *Bryce W. Royce, Esq.,* for the respondent.

#### OPINION.

STERNHAGEN: The Commissioner determined a deficiency of $4,159.49 in petitioner's income tax for 1934. He included in her income a portion of the income of a trust established by her in which the right to alter and amend was held jointly by herself and her husband, who was the trustee and a beneficiary. The facts are contained in a written stipulation.

Petitioner, a resident of Boston, Massachusetts, on December 31, 1931, transferred personal property in trust to her husband, Donald McKay Frost, as trustee. The trust directs the trustee to hold and manage the corpus, to collect the income, and, after paying expenses, to distribute income and principal as follows:

1. The Trustee shall accumulate the net income received during each calendar year and on the last day of the year shall pay to Donald McKay Frost individually during his lifetime one-fifth (⅕) of such accumulated net income, but not less than the sum of Five Thousand (5,000) Dollars, and shall transfer and pay the balance of the net income, or the entire net income after the death of Donald McKay Frost, into the principal of the trust * * *.

2. The Trustee at any time or from time to time upon receipt of a request or requests in writing signed by Donald McKay Frost and Mrs. Mary Ryerson Frost while both are living and of sound mind, or, in case of the death or mental incapacity of either of them, by the survivor or other of them and by any one of their three (3) children hereinafter mentioned then living and of age and of sound mind, shall distribute and pay over the principal of the trust fund in whole or in part and in equal or unequal shares to or for the benefit of Donald McKay Frost, Mrs. Mary Ryerson Frost and their children Mary Ryerson Frost 2d, Donald McKay Frost, Jr., and Mary Jane McKay Frost, or any one or more of them, all as shall be specified in said written request or requests.

Paragraph 4 provides that if the trust is not sooner terminated by distributions it shall terminate upon the death of the last survivor of the husband and wife and their three children, and the property shall then be distributed in three equal shares to the children's appointees by will or, in default of appointment, to their heirs at law.

5. This trust may be altered or amended at any time or from time to time by an instrument or instruments in writing delivered to the Trustee and signed by the following parties:

(a) During the joint lives of Donald McKay Frost and Mrs. Mary Ryerson Frost and so long as they shall both be of sound mind, by an instrument or instruments in writing signed by both of them.

(b) After the death or mental incapacity of either Donald McKay Frost or Mrs. Mary Ryerson Frost, by an instrument or instruments in writing signed by the survivor or either of them.

Donald McKay Frost, Jr., died in 1932. The two daughters are still living.

On July 12, 1933, petitioner and her husband, by written instrument, changed the trust provisions relating to the appointment of a successor trustee. On November 28, 1934, as a memorial to their son, they directed the trustee in writing to pay the 1934 income and so much of the principal as might be necessary (but not exceeding $40,000) to St. Mark's School for the construction and furnishing of certain rooms at the school, and to transfer $10,000 in cash or securities to the school as an endowment for the maintenance and repair of the rooms. St. Mark's School is a college organized and operated exclusively for educational purposes, and no part of its net earnings inures to the benefit of any private shareholder or individual.

In 1934 the trust received income of $14,362.17, derived from "nontaxable obligations", and other income of $34,635.81, of which $2,277.53 was capital net gain. It was entitled to deductions of $2,296.89. During the year the trustee paid $8,910.21 to himself as trust beneficiary; transferred income of $8,780.10, exclusive of capital gain, to trust principal, and paid to the school for constructing, furnishing, and maintaining rooms, $34,260.75, of which $7,500 was from trust principal and the remainder from 1934 income. In his individual income tax return for 1934 Donald McKay Frost reported $6,031.78

received from the trust as one-fifth of the trust's taxable net income for 1934, computed without any deduction for the contribution to the school or for a $100 contribution.

In determining the deficiency for 1934 the Commissioner included in petitioner's individual income $21,064.10, being all of the taxable income of the trust for that year except $6,031.78 which went to Donald McKay Frost. He defends this determination under sections 166 and 167 of the Revenue Act of 1934, on the ground that it is only as to one-fifth of the trust income that petitioner as the grantor of the trust is without possibility of ownership and control. Although the theory of the Commissioner's determination is not clearly stated, we are of opinion that the determination is within section 167 and that it is unnecessary, therefore, to consider whether section 166 is applicable. In purpose the two sections, one relating to revesting of corpus and the other of income, are to be construed by similar considerations, *Kaplan* v. *Commissioner*, 66 Fed. (2d) 401; *Higgins* v. *White*, 18 Fed. Supp. 986.

By the terms of paragraph 1 of the trust instrument, so much of the net income as remains after the distribution to Donald McKay Frost as an individual is to be transferred to trust principal; and by paragraph 2 it is provided that if the grantor survives her husband some or all of such net income as has become principal may at the direction of herself and one of her children be distributed to her. By paragraph 5, after the death of her husband before her own she alone could amend the terms. This is literally within section 167 and also harmonious with its intendment as interpreted by the First Circuit Court of Appeals in the *Kaplan* case. Furthermore, this is not a mere possibility of reversion, cf. *William E. Boeing*, 37 B. T. A. 178 (on review C. C. A., 9th Cir.) ; *John Edward Rovensky*, 37 B. T. A. 702, for the right to control the use of the remaining four-fifths principal does not lie inchoate pending the grantor's survivorship of her husband, but is a power existing at all times in her, first in conjunction with her husband and then alone.

Finding the determination to be supported by the language of section 167, we need not consider the question argued, whether during the life of the husband he was a person not having a substantial adverse interest, see *Jane B. Shiverick*, 37 B. T. A. 454, or the question whether the minimum of $5,000 causes the husband's individual interest to permeate beyond one-fifth of the income into the whole trust corpus.

The Commissioner now submits a further contention not suggested in his notice of deficiency. The contention is that the amount paid to St. Mark's School as a memorial to the deceased son must be regarded as having been paid constructively to the petitioner and by her given gratuitously to the school. This view we think can not be accepted.

The trust instrument was amended, as permitted by article 5, to make the school a beneficiary of the trust. The amount which it received was received in that capacity. While it is true that by the terms of the instrument the petitioner, with her husband, might have requested in writing that the trustee pay this amount out of principal to her in order to enable her in turn to make a gift to the school, this was not done, and we see no reason to attribute to the petitioner an amount which she did not receive, through the application of the artificial doctrine of constructive receipt. What was done and not what might have been done is the basis for tax. *United States* v. *Phellis*, 257 U. S. 156; *Davidson* v. *Commissioner*, 305 U. S. 44. The respondent was in error in attributing to the petitioner as part of her individual income any part of the amount paid by the trust to the school in the taxable year.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

LEECH concurs only in the result.

———

ARUNDELL, dissenting: I disagree with that part of the majority opinion holding that the trust created by the petitioner comes within section 167 of the Revenue Act of 1934. That section, as far as material here, provides for taxing to the grantor the trust income that "is * * * held or accumulated for future distribution to the grantor." In this case, while four-fifths of the income "is * * * held or accumulated", I do not see how it can be said that it is held or accumulated "for future disposition to the grantor" in view of the fact that she could not by her own act secure distribution to her unless she survived her husband-beneficiary. The possibility of her survival is a contingency over which she has no control. A similar contingent reversion in *William E. Boeing*, 37 B. T. A. 178, is described as a mere "possibility of reverter", and we held that under such a bare possibility the trust income is not "held or accumulated *for* future distribution to the grantor." Neither this trust nor the Boeing trust contains definite provision for future distribution to the grantor. While this trust has in it a provision for amendment by joint action of the grantor and the beneficiary, and the Boeing trust did not, this is not a distinction as the Boeing grantor and beneficiary, being the only parties in interest, could together have amended at any time. *Helvering* v. *Helmholz*, 296 U. S. 93. I am unable to see any ground for distinguishing the two cases, and under the principle of the *Boeing* case the trust income here is not reached by section 167.