### ALTMAIER v. COMMISSIONER OF INTERNAL REVENUE.
### No. 8367.
Circuit Court of Appeals, Sixth Circuit.
Dec. 17, 1940.

Robert C. Dunn, of Toledo, Ohio (John J. Kendrick, of Toledo, Ohio, and Richard V. Willcox, of Columbus, Ohio, on the brief), for petitioner.

Edward H. Hammond, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Edward H. Hammond, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before HICKS, ARANT, and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

The petitioner, Oscar C. Altmaier, by three trust instruments, all executed February 18, 1932, constituted his wife Trustee of a total number of 3,600 shares of the common stock of a corporation. The documents were identical, except that the three minor children of the petitioner and his wife were each respectively named as co-beneficiary with the wife in one of the three separate trust indentures. Shortly after the trusts became operative, the City National Bank of Columbus, Ohio, was appointed, pursuant to power reserved by the petitioner, co-trustee with Mrs. Altmaier.

Each of the three agreements provided, inter alia, that, subject to the rights reserved to the settlor and his wife, the trustee should hold, manage and control the trust estate under the granted rights and powers. Provision was made that the net income of the trust estate should be accumulated, invested and added to the principal during the remainder of settlor's life, or until his wife's death should she predecease him.

Each trust indenture directed the trustee to pay, beginning at the death of the *settlor,* the entire net income to the wife for the remainder of her life; unless, prior to her death, the trust fund should be exhausted as a result of permitted encroachments upon the principal.

The trustee was directed to pay, beginning at the death of the *wife,* the entire net income to the settlor for the remainder of his life. Upon the death of the surviving husband or wife, the trustee had the imposed duty of distribution to settlor's named child, or to the latter's next of kin, in compliance with the elaborate provisions of the trust agreement.

The requirement was incorporated that, during the life of the settlor, the trustee, upon the joint order of the settlor and his wife, should be beholden to provide, by hypothecation, mortgage, or transfer of any portion of the trust estate, collateral security for the indebtedness of the husband and wife, or their designees.

It was provided further that, during his lifetime and legal competency, the settlor should direct in writing the purchase and sale of all investments in the trust, and that he reserved in himself the power to vote the shares of stock comprising the trust estate. It was stipulated, also, that while he lived, all stock dividends should be treated as principal.

During his lifetime or until he should be judicially declared legally incompetent, the settlor and his wife were given the right, jointly, by instrument in writing directed to the trustee, to alter, amend, revoke, or *terminate* the trust agreement, or to withdraw any property at any time comprising a portion of the trust estate. Furthermore, it was expressly provided that if the settlor should survive his wife, he could, by instrument in writing directed to and accepted by the trustee, exercise *singly* the same powers of alteration or termination.

The trust indenture provided further that "the trustee may resign or *be discharged* by the settlor during the lifetime of the settlor upon thirty (30) days written notice by either party to the other," etc.

The Board of Tax Appeals upheld the Commissioner of Internal Revenue in assessing, under Section 167 of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Code, § 167, income tax deficiencies for 1932 and 1933 against petitioner, resultant from the inclusion by the Commissioner of dividends and interest from the trust property in petitioner's gross income for the years mentioned. The Board cited its earlier decision in Frost v. Commissioner, 38 B.T.A. 1402, in support of its ruling.

Both the Commissioner and the Board of Tax Appeals based the taxability of the petitioner squarely upon Section 167 of the Revenue Act of 1932, Chapter 209, 47 Stat. 169, which provides:

"§ 167. Income for benefit of grantor (a) Where any part of the income of a trust—

"(1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor; or

"(2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor; * * * then such part of the income of the trust shall be included in computing the net income of the grantor.

"(b) As used in this section the term 'in the discretion of the grantor' means 'in the discretion of the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of the part of the income in question.'"

This section of the Revenue Act plainly embraces the facts of the instant case. Here the trust instrument specifically directs that (1) the net income of the estate shall be *accumulated,* invested and added to the principal while the settlor lives or until his wife dies, should she predecease him, (2) in which latter event, he shall receive the entire net income for the rest of his life, or in the alternative (3) may sweep clean the entire original and accumulated trust estate by the exercise of his reserved power to terminate and take all.

Reasonable statutory construction demonstrates that the dependency of his right to corral the accumulated income of the trust upon his survivorship of his wife is immaterial. Under the arrangements of the trust agreement, the income of the trust "may be * * * accumulated for future distribution to the grantor." The express language of the statute covers the situation exposed by analysis of the indenture. See Kaplan v. Commissioner, 1 Cir., 66 F.2d 401, 402 in which the court, construing a similar section of the Revenue Act of 1924, said: "We think the statute means that if under any circumstances or contingencies any part of the accumulated income might inure to the benefit of the grantor, such portion of the income is taxable to him." Cf. First National Bank of Chicago v. Commissioner, 7 Cir., 110 F. 2d 448, decided March 18, 1940.

Moreover, Subsection (a) (2) of Section 167 applies, for the reason that even during the lifetime of the wife, by joint instrument in writing the husband and wife would be privileged to withdraw the accumulated income and pay it over to the settlor. Indeed, the husband and wife, acting jointly, could terminate the trust at any time.

In the circumstances, the wife is not, in our judgment, a person "having a substantial adverse interest" within the meaning of the statute. This conclusion results from thoughtful consideration of what is termed by the Supreme Court, in Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 557, 84 L.Ed. 788, decided February 26, 1940, "the normal consequences of family solidarity"; because here as there "the income remains in the family and since the husband retains control over the investment, he has rather complete assurance that the trust will not effect any substantial change in his economic position.".

The concept of the inclusive effect of "family solidarity" upon income taxation is carried to an advanced position in Helvering v. Horst, 61 S.Ct. 144, 147, 85 L.Ed. ——, decided on November 25, 1940, since the oral argument of this case. A situation was presented where a father had given his son interest coupons, detached from bonds retained by the donor, the son having received payment of the coupons later in the year. The power to dispose of income was treated as equivalent to its ownership and the father was held liable for income tax upon the proceeds of the coupons. Although the donor had cut off his right to collect the coupons, he had "by his act, procured payment of the interest, as a valuable gift to a member of his family," which was deemed as complete an enjoyment by him of economic benefit in "money's worth" as if he had collected and expended the interest in dollars and cents. The court cites Burnet v. Wells, 289 U.S. 670, 53 S.Ct. 761, 77 L.Ed. 1439. In its opinion, the court approves as authoritative: Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731; Douglas v. Willcuts, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3, 101 A.L.R. 391; and Corliss v. Bowers, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916, in the last of which, as will be recalled, Mr. Justice Holmes made the famous comment that, "taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid." (Opinion page 378 of 281 U.S., page 336 of 50 S.Ct., 74 L.Ed. 916.)

Before the decision of the Horst case, supra, the Tenth Circuit Court of Appeals, applying the language just quoted, and also relying on the Clifford case, supra, and Burnet v. Wells, supra, held in Cox v. Com'r (Childers v. Com'r), 110 F.2d 934, 936, that where trust instruments provided that the trusts might be terminated and the corpus restored to the donor with the con-

sent of any beneficiary having "a substantial adverse interest" in the disposition of the corpus, the income was taxable to the donor; because, said the court, "in view of the broad powers of the donor, as trustee, and the family relation, we think it may be reasonably assumed that such a consent would be freely given." The donor's powers were considered "substantially equivalent to those of owner of the corpus and the income and the trust amounted to no more than an arrangement for distribution of income to the family group in accordance with the will and discretion of the donor."

This language seems quite applicable to the facts of the instant case.

The petitioner contends that inasmuch as his right to acquire the accumulated income of the trust estates depends entirely upon the mere possibility that he shall survive his wife—a circumstance over which he has no control—such mere possibility of his acquiring the accumulated income is no justification for bringing the trusts, with which we are concerned, within the provisions of Section 167 of the revenue act of 1932.

He urges upon us Corning v. Commissioner, 6 Cir., June 6, 1939, 104 F.2d 329, which, with respect to "possibility of reverter," dutifully applied the doctrine of Helvering v. St. Louis Trust Co., 296 U.S. 39, 56 S. Ct. 74, 80 L.Ed. 29, 100 A.L.R. 1239. But the Corning case is no longer authority upon the subject, for the reason that the Supreme Court, in Helvering v. Hallock, January 29, 1940, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368, reversing 6 Cir., 102 F.2d 1, expressly overruled Helvering v. St. Louis Trust Co., supra, and Becker v. St. Louis Trust Co., 296 U.S. 48, 56 S.Ct. 78, 80 L.Ed. 35, as untenable departures from the doctrine of Klein v. United States, 283 U.S. 231, 51 S.Ct. 398, 75 L.Ed. 996, which was distinctly approved. The Supreme Court declined to apply "distinctions which originated under a feudal economy when land dominated social relations" as "peculiarly irrelevant in the application of tax measures now so largely directed toward intangible wealth." It was said that "the importation of these distinctions and controversies from the law of property into the administration of the estate tax precludes a fair and workable tax system." 309 U.S. at page 118, 60 S.Ct. at pages 450, 451, 84 L.Ed. 604, 125 A.L.R. 1368.

It follows that the judgment of the Board of Tax Appeals should be affirmed; and it is so ordered.