JOHN B. DOWNIE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 101502.   Promulgated April 10, 1942.

*T. G. Thompson, Esq.,* for the petitioner.
*Thomas F. Callahan, Esq.,* for the respondent.

### OPINION.

TURNER: The respondent determined deficiencies in income tax for the years 1936 and 1937 in the respective amounts of $363.06 and $2,901.65. The question presented is whether the income from a trust created by petitioner is taxable to him under sections 166, 167, or 22 (a) of the Revenue Act of 1936. The case was submitted upon a written stipulation of facts, together with several exhibits attached thereto, and we adopt the facts as stipulated as our findings of fact herein.

Petitioner is an individual residing in Cleveland, Ohio. He filed his income tax returns for 1936 and 1937 with the collector of internal revenue for the eighteenth district of Ohio.

On August 30, 1935, petitioner and the National City Bank of Cleveland executed a trust agreement which provides in part as follows:

TRUST AGREEMENT

I.

PRELIMINARY RECITALS

1. This agreement is entered into at Cleveland, Ohio, this 30th day of August, 1935 by and between JOHN B. DOWNIE, of Lakewood, Ohio, the creator of the trust, who is hereinafter referred to in the first person, and THE NATIONAL CITY BANK OF CLEVELAND, a national banking association, hereinafter referred to as the trustee.

2. Concurrently herewith I have assigned, delivered, transferred and conveyed to the trustee certain property described in Exhibit A attached hereto and made a part hereof.

3. The trustee acknowledges receipt of the aforesaid property and that it holds same in trust, and that it will hold all other property that may be added thereto in trust for the purposes and on the terms hereinafter set forth.

II.

RIGHTS RESERVED BY THE CREATOR OF THE TRUST

1. I reserve the right with the consent of the trustee to bring additional property under the terms of this agreement. I further reserve the right at any time to revoke this agreement, to withdraw from the operation of this agreement any part or all of the trust property, to change the beneficiaries hereunder, their shares and the plan of distribution to each, and with the trustee's consent to modify this agreement in any other manner. Provided, however, that so long as either my brother, James H. Downie, or my sister, May A. Downie, shall be living and in the reasonable judgment of the trustee physically and mentally capable of giving consent and approval to the exercise of the rights reserved to me in the next preceding sentence, such rights shall be exercised by me only with the consent and approval of one or the other of them.

2. I reserve the right at any time, upon giving reasonable notice to the trustee, to require it to transfer the entire trust estate to any other fiduciary I may designate as successor trustee, provided such successor trustee shall first execute its formal written acceptance of the duties and obligations of the trustee hereunder and file an executed copy of such acceptance with the trustee herein named. When this is done and when all sums then due from the trust estate to the trustee herein named have been paid it shall transfer the trust property then in its hands to the successor trustee, and shall thereupon and thereby be discharged of all duties and obligations under or arising out of its trusteeship. In like manner I may require transfer from any successor trustee to a subsequent successor trustee.

III.

POWERS AND DUTIES OF THE TRUSTEE

1. During the term of this agreement and until the trust created hereunder shall have been discharged, the trustee shall have title to and possession of all property coming within the terms hereof, with full power and authority,

except as expressly limited in this agreement, to manage, control, sell, convey, lease for any term of years irrespective of the period of the trust, invest, and reinvest the same and any part thereof as it deems advisable and to deal therewith in all respects as though the absolute owner thereof, all limitations now or hereafter imposed by law or rule of court on investments by trust companies or fiduciaries generally being hereby expressly waived.

The trustee shall make any sale, lease, investment or reinvestment of the trust estate or any part thereof which I may at any time in writing direct, or, during any period during which, in the reasonable judgment of the trustee, I am physically or mentally incapable of giving such direction, then any sale, lease, investment or reinvestment which my brother, James H. Downie, if living and capable of acting, may in writing direct, and the trustee shall have no responsibility with respect to any such sale, lease, investment or reinvestment so directed to be made except to comply with the written directions given. The trustee shall make no sale, lease, investment or reinvestment on account of the trust estate while I or my said brother shall be exercising such right of direction except upon our direction as aforesaid. The trustee may retain as part of the trust estate without liability for depreciation in value any securities or other property deposited hereunder by me, or the purchase of which shall have been directed by me or my said brother, and during any period in which I or my said brother shall be exercising the right of direction as aforesaid, the trustee shall not be obliged nor required nor shall it have any duty or responsibility to consider or recommend the advisability of selling or continuing to hold as a part of the trust estate any securities or other property held thereunder.

2. The trustee is empowered to determine whether money and property coming into its hands hereunder shall be treated as principal or income, and it may apportion expenses to principal or income as it may deem just.

\*       \*       \*       \*       \*       \*       \*

## IV.

### DISTRIBUTION OF PRINCIPAL AND INCOME

1. During my lifetime, but subject to the rights reserved under Article II hereof, the trustee shall accumulate the net income derived from the trust estate and add the same, as and when received, to the principal of the trust estate. In the event I shall become disabled so that in the reasonable judgment of the trustee I am unable to exercise the right of withdrawal or principal herein reserved to me, the trustee shall have power and authority to pay over to my brother, James H. Downie, or my sister, May A. Downie, or to expend for my use and benefit, such portion of the income or principal of the trust estate as my said brother or sister, or if both of them shall be deceased or in the reasonable judgment of the trustee incapable of advising the trustee in such respect, then as the trustee shall deem necessary or proper in order to provide for my care, support and comfort, taking into consideration my income from other sources.

2. After my death, the trustee shall first pay and discharge any and all taxes that may be found to be due by reason of or with respect to any gift hereby made, whether the same shall be assessed against the trust estate as such or against my general estate or against any beneficiary hereunder, to the extent of the trust funds then in its hands.

3. If both my said sister and my said brother shall survive me, then, upon my death, the trustee shall distribute the residue of the trust estate, both in-

come and principal, to them in equal shares, or if only one of them shall survive me, the trustee shall distribute all of the residue to such one. If neither my said sister nor my said brother shall survive me, then upon my death and if I shall not have revoked this agreement under the right reserved to me by the provision of Article II hereof, the trustee shall distribute all of the residue of the trust estate, both income and principal, to the heirs-at-law of my said brother determined, however, in accordance with the laws of the State of Ohio at that time in force respecting the distribution of personal property of an intestate, but for the purpose of determining such heirs, his death shall be considered as having occurred at the instant when such distribution shall be due.

On the date the above agreement was executed petitioner transferred and assigned certain property to the bank to hold in trust and from time to time and ultimately to dispose of the income and principal as provided for therein. On or about October 6, 1936, petitioner transferred and assigned certain additional property to the bank to hold in trust and dispose of with the property which then comprised the trust estate.

The parties have stipulated the following additional facts:

Since said August 30, 1935, all net income and all net profits of trust estate have been accumulated by the Trustee and added to the principal of the trust estate. Since said date no part of the income received by the Trustee has been applied to the payment of any premium upon any policy of insurance upon the life of the Petitioner. Since said date no income or profits of the trust estate and no principal thereof has been paid over to Petitioner, or expended for his use or benefit, or paid over to May A. Downie or to James H. Downie, sister and brother respectively of Petitioner, as beneficiaries, or to any beneficiary under said trust agreement. The trust agreement was not revoked nor was it in any respect modified during either the year 1936 or the year 1937. No property at any time transferred to and made a part of the trust estate either in its original or in a converted or reinvested form has later been withdrawn therefrom.

May A. Downie, sister of Petitioner, and one of the beneficiaries of the trust, was born May 21, 1883. James H. Downie, the other beneficiary, was born September 23, 1897. Petitioner was born April 15, 1887.

Since the trust was created the Petitioner has not been physically or mentally disabled or at any time unable to exercise any right reserved to him under the trust agreement. Since the trust was created both of the beneficiaries, May A. Downie and James H. Downie, have at all times been physically and mentally capable of giving such advice, consent and approval as might have been required of them or either of them concerning revocation or modification of the trust agreement, change of the beneficiaries thereunder, their shares and the plan of distribution to each, or withdrawal of assets deposited under the trust agreement or distributions of the income or principal of the trust under the provisions of the trust agreement. In each year since the date of the trust agreement and throughout the year 1936 and the year 1937, the Petitioner has received from sources other than the trust, much more than the amount of income necessary to provide for his care, support and comfort.

A large part of the deficiency tax in controversy for the year 1937 is computed with respect to capital gains realized upon sales of securities which the trustee made during said year 1937.

The Petitioner filed gift tax returns with the Collector of Internal Revenue for the years 1935 and 1936 and reported on said returns as gifts the property which he transferred to the trustee during each of said years to be held under the trust agreement. The property so transferred during said years had an aggregate value of less than the amount of the exemption allowable by law to Petitioner and he therefore paid no gift tax for either of said years.

Since the trust was created both May A. Downie and James H. Downie, sister and brother respectively of Petitioner, have maintained living establishments entirely apart and separate from those maintained by Petitioner, who, during each of the years 1936 and 1937 was married and living with his wife. During the year 1936 and the year 1937 Petitioner was not in any way liable for the support of either his said sister or his said brother.

Subject to the terms of the trust instrument petitioner on August 30, 1935, and October 6, 1937, transferred certain of his property to the National City Bank of Cleveland, as trustee, and to the extent therefore that the trust instrument did not provide for the passage of his ownership or interest in the property to the trustee it was retained by and remained in the petitioner. *Klein* v. *United States*, 283 U. S. 231, and *Helvering* v. *Hallock*, 309 U. S. 106. See *Everett D. Graff*, 40 B. T. A. 920. Prior to the transfer the petitioner's ownership in the property was absolute and included the right to the income therefrom. Under the trust agreement the trustee was to hold the property for the duration of the trust and was to accumulate and add the net income to principal. In transferring the property to the bank, as trustee, the petitioner specifically reserved the right to revoke the trust agreement or to withdraw any part or all of the trust property at any time. So long, however, as his brother or sister should live such power was to be exercised only with the consent and approval of one or the other of them, but after their deaths the power could be exercised by the petitioner acting alone. In *Rollins* v. *Helvering*, 92 Fed. (2d) 390, the Circuit Court of Appeals for the Eighth Circuit said: "Section 167 is not concerned with what *is* done under a trust agreement but with what *might be* done thereunder." In *Kaplan* v. *Commissioner*, 66 Fed. (2d) 401, the Circuit Court of Appeals for the First Circuit said: "We think the statute means that if under any circumstances or contingencies any part of the accumulated income might inure to the benefit of the grantor such portion of the income is taxable to him." While in *Kent* v. *Rothensies*, 120 Fed. (2d) 476, the Circuit Court of Appeals for the Third Circuit held that it was not necessary that the income be "unconditionally" held or accumulated for future distribution to the grantor as a prerequisite to the application of section 167. Through the exercise of the reserved power, first in conjunction with his brother or sister, and after their deaths, alone, the petitioner in the instant case could withdraw part or all of the trust property, including the accumulated income.

In *Mary Ryerson Frost*, 38 B. T. A. 1402, on facts substantially

similar to those stated above, we held that the trust income was taxable to the grantor under section 167. The same conclusion follows in this case. *Mary Ryerson Frost, supra; Altmaier* v. *Commissioner*, 116 Fed. (2d) 162; *Ella U. Seipp*, 44 B. T. A. 720; *William Lea Taylor*, 37 B. T. A. 875; and *David M. Heyman*, 44 B. T. A. 1009. This is not a case where the income is payable to or vests in persons other than petitioner so that it passes beyond the reach of his retained power of withdrawal, and it is only through his death without withdrawal of the trust funds or revocation of the trust instrument that he is fully divested of his rights in and to the trust income.

That the income of the trust is taxable to the petitioner as grantor of the trust is also supported by other facts not apparent in some or all of the cases cited above. Here the petitioner reserved the right to direct and control the sale, lease, investment, or reinvestment of the trust property or any part thereof and prohibited any of these activities by the trustee except upon written directions from him. It thus appears that as the trust was originally constituted the petitioner was not the trustee, as in *Helvering* v. *Clifford*, 309 U. S. 331, but not only did he reserve the above described powers unto himself, but just as specifically he relieved the trustee of any and all responsibility and liability in respect of the transactions involving the trust property. Furthermore, he reserved the right to require the transfer of the entire trust estate, which included accumulated income, to any successor trustee he might designate. Under this power he could have become trustee at any time. Cf. *Suhr* v. *Commissioner*, 126 Fed. (2d) 283; *Commissioner* v. *Goulder*, 123 Fed. (2d) 686; and *Commissioner* v. *Buck*, 120 Fed. (2d) 775.

It is also to be noted that at the death of petitioner, if the trust agreement had not been previously revoked or the trust property not wholly withdrawn prior to that time, the trustee was required to the extent of the funds remaining in its hands, first, to pay and discharge all taxes due by reason of or with respect to any gift made by or under the trust instrument, whether assessed against the trust estate as such, against the estate of the petitioner, or against any beneficiary under the trust. It thus appears that the trust property, including the accumulated income, was charged with any tax liability of the petitioner with respect to the transfer of property to the trust or its transmission to others under the terms of the trust instrument at or prior to his death. These facts, in our opinion, leave no doubt that the accumulated income was intended to and did inure to the benefit of the grantor and that section 167, *supra*, is therefore applicable. We think it also apparent that the trust property and the accumulated income was at all times under the dominion and control of petitioner so as to bring it under the rule laid down by *Helvering* v. *Clifford, supra*.

As tending to the same conclusion, the respondent stresses the provision whereby the petitioner reserved the right, in the event of his disability, to have withdrawn or expended for his use and benefit such portions of income and principal as his brother or his sister, or in the case of their deaths or inability to act, as the trustee might deem necessary or proper for his care, support, and comfort. While we do not consider it essential to the disposition of this case to dispose of that contention, attention is called to the recent decision of the United States Circuit Court of Appeals for the Third Circuit in *Helvering* v. *Evans*, 126 Fed. (2d) 270.

In reaching the above stated conclusion, we have not overlooked the recent decision in *Commissioner* v. *Betts*, 123 Fed. (2d) 534, where the facts are similar in many respects to the facts in the instant case and on first impression might indicate a conclusion contrary to that reached here. In determining the applicability in that case of section 167, *supra*, the court considered among the decided cases only those dealing with the possibility of reverter, a factor not here involved, as was pointed out in *Mary Ryerson Frost*, *supra*. Cf. *William E. Boeing*, 37 B. T. A. 178; *Paul W. Litchfield*, 39 B. T. A. 1017; *Marrs McLean*, 41 B. T. A. 565; *Christopher L. Ward*, 40 B. T. A. 225; *Genevieve F. Moore*, 39 B. T. A. 808. The court in the *Betts* case did consider *Altmaier* v. *Commissioner*, *supra*, but only with respect to the applicability of section 166 of the statute. We do not consider therefore that a change in the conclusion here reached contrary to the line of cases followed is indicated or required by the *Betts* case.

*Decision will be entered under Rule 50.*