**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**ESTATE of Eleanor Buchanan TALBOTT, Deceased, Bryan Carver, Executor, Respondent.**

No. 12081.

United States Court of Appeals
Fourth Circuit.

Argued May 9, 1968.

Decided Sept. 20, 1968.
Certiorari Denied Jan. 13, 1969.

See 89 S.Ct. 631.

**852**

David E. Carmack, Atty., Dept. of Justice (Mitchell Rogovin, Asst. Atty.

Gen., Lee A. Jackson and Harry Baum, Attys., Dept. of Justice, on the brief), for petitioner.

Walter E. Barton, Washington, D. C. (Bryan Carver, Hot Springs, Va., on the brief), for respondent.

Before BOREMAN, WINTER and CRAVEN, Circuit Judges.

WINTER, Circuit Judge:

The Tax Court held that the res of an inter vivos trust, created in 1923, was not includable in the surviving settlor's gross estate for purposes of the federal estate tax.[1] It did so on the theory that the transfer of the corpus was complete prior to March 4, 1931, notwithstanding the Commissioner's contention that a power to amend or to revoke the trust possessed by the settlor and her husband, an allegedly nonadverse party, continued at least until 1935, so that the complete and irrevocable transfer of the corpus did not occur before March 4, 1931, thus rendering inoperative § 2036(b) of the Internal Revenue Code of 1954, as amended. 26 U.S.C.A. § 2036(b) (1967 Ed.).[2] We reverse.

Eleanor Buchanan Talbott ("decedent") was a resident of Hot Springs,

---

1. Estate of Eleanor Buchanan Talbott, 48 T.C. 271 (1967).

2. The full text of § 2036, which provides which trusts having reserved life interests are subject to the estate tax and which are not, follows:

"§ 2036. Transfers with retained life estate

(a) General rule.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

(1) the possession or enjoyment of, or the right to the income from, the property, or

(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

(b) Limitations on application of general rule.—This section shall not apply to a transfer made before March 4, 1931; nor to a transfer made after March 3, 1931, and before June 7, 1932, unless the property transferred would have been includible in the decedent's gross estate by reason of the amendatory language of the joint resolution of March 3, 1931 (46 Stat. 1516)."

We need not concern ourselves with the possibility of a transfer made after March 3, 1931, and before June 7, 1932, in this case. There was in fact none.

Virginia, at the time of her death on December 30, 1962. Bryan Carver ("taxpayer"), a resident of Hot Springs, Virginia, is the duly appointed executor of her estate.

On July 5, 1923, the decedent executed a trust under the terms of which the net income was payable to the decedent and her husband during their joint lives, and upon the death of either to the survivor for life. Paragraph SECOND of the trust agreement, provided that after the death of both the decedent and her husband, the corpus of the estate was to be paid over to four named beneficiaries, their survivors. Paragraph TENTH provided that the decedent could, during her husband's life and with his consent, modify, alter, or revoke the trust in whole or in part. It further provided that the surviving life income beneficiary could do so with the consent of Charles F. Talbott, one of the remaindermen. Transfers of securities were made to the trust corpus in 1923, and in 1929. On October 3, 1932, and on April 10, 1933, the decedent with the consent of her husband revoked the trust in part. The consent of Charles F. Talbott to these partial revocations was neither sought nor obtained.

The decedent's husband died on November 15, 1935. Charles F. Talbott died on March 6, 1937.

In 1943, the decedent executed an instrument directing the manner in which the trustee was to appropriate funds received from the distribution of specified bonds, as between the trust income and principal. In 1964, the Supreme Court of the State of New York entered a final accounting order which provided, inter alia, that the decedent had no authority to revoke the trust to the extent contained in the instrument executed in 1943.

The trust was still in existence at the date of the decedent's death.

As appears from the text quoted in the margin, § 2036(a) of the Internal Revenue Code of 1954 requires the inclusion of the corpus of a trust created by the decedent in her gross estate for federal estate tax purposes if she retained a life estate. Section 2036(b) excepts from that provision a "transfer" made before March 4, 1931. In the case at bar, the trust instrument was executed in 1923 and conveyances to the res made in 1923 and 1929, all before the crucial date. But the decedent reserved the right to amend or revoke the trust in whole or in part with the consent of her husband during their joint lives and thereafter, if she survived her husband, with the consent of one of the remaindermen. Her husband died in 1935 and the remainderman whose consent to amendment or revocation was thereafter requisite died in 1937. What we must decide is when the "transfer" of the corpus occurred, and specifically whether it occurred prior to March 4, 1931. Our decision proceeds from our determination that decedent's husband did not have a substantial adverse interest to her during his lifetime and that § 2036(b) applies only to irrevocable trusts.

–I–

■ Although the Tax Court deemed immaterial the question of whether the trust was revocable, it did find that the decedent's husband did not have a substantial adverse interest and that the trust, therefore, was revocable on March 4, 1931. With this conclusion we agree. A life interest in income has been held to be not·such a substantial interest as substantially adversely affected decedent's control over the remainder. Koshland's Estate v. C.I.R., 11 T.C. 904 (1948), aff'd., 177 F.2d 851 (9 Cir. 1949). Where, as in the instant case, decedent retained the power to alter, as well as to revoke, the trust, the same rule applies, because alteration is but partial revocation—a species of, although usually something less than, complete revocation.

■ Nor was decedent's husband's interest rendered substantially adverse be-

cause, in the event of revocation, he was required to join in, or to consent to, the disposition of the res or the portion thereof affected by partial revocation. We recognize that decedent's husband could exercise the requirement of his joinder or consent in such a way as to direct a portion of the res to himself or his nominees and thus prevent decedent from exercising full dominion over the res.[3] But, absent a showing that it would be reasonable to believe that this authority was, or would have been, used in this manner—and on this record there is none, it does not constitute a substantial adverse interest. Too easily could decedent and her husband, had they determined to revoke the trust entirely, and to return the res to decedent's unfettered legal dominion and control, have employed a straw man as the initial transferee, to render the "adverseness" of decedent's husband's interest more illusory than real.

■ To show that there was a substantial adverse interest and, hence, to establish that the trust was irrevocable, taxpayer argues that, properly construed, Paragraph TENTH of the trust indenture required Charles F. Talbott to consent to, or to join in, the revocation, modification or alteration of the trust in whole or in part even during the lifetime of both life tenants.[4] This argu-

ment was not advanced in the Tax Court; indeed, there it was assumed that during the joint lives of the life tenants, the joinder or consent of Charles F. Talbott was unnecessary. The short answer to the contention is whatever ambiguity may have existed about the correct meaning of Paragraph TENTH the actions of the parties spoke louder and more clearly than their words. On two occasions during the joint lives of decedent and her husband there were partial revocations of the trust; on neither was the joinder or consent of Charles F. Talbott sought or obtained. After the fact, we will not permit the taxpayer to urge a contrary interpretation. The actions of the parties most directly concerned have cured any latent ambiguity in the trust instrument.

–II–

Having concluded that decedent's husband did not have a substantial adverse interest, and that Charles F. Talbott was not invested with any voice in the revocation, amendment or modification of the trust during the joint lives of the life tenants, we turn to the question of whether § 2036(b) was intended to exclude revocable, as well as irrevocable, trusts established before March 4, 1931, from the settlor's gross estate. The question arises because decedent's husband lived until 1935, so that, for tax

---

3. We note that there is authority that husband and wife cannot have a substantial adverse interest against each other. Altmaier v. Commissioner of Internal Revenue, 116 F.2d 162 (6 Cir. 1940) cert. den., 312 U.S. 706, 61 S.Ct. 827, 85 L.Ed. 1138 (1941). Contra: Commissioner of Internal Revenue v. Betts, 123 F.2d 534 (7 Cir. 1941). We deem it unnecessary to place our decision on this ground.

4. The pertinent portion of the indenture follows:
   "TENTH: Notwithstanding anything to the contrary herein contained, this agreement or the terms thereof may, from time to time, during the continuance of the trust hereby created, by instrument of the party hereto of the first part and said William M. Talbott, or by the survivor of them, together with Charles F. Talbott, in writing, executed and acknowledged in the manner required for a deed of real property so as to enable it to be recorded in the State of New York and delivered to the Trustee, modify or alter in any manner, or revoke in whole or in part, this indenture and the trusts then existing, and the estates and interests in property hereby created, and in case of such revocation said instrument shall direct the disposition to be made of the trust fund or of the portion hereof affected by such revocation, and the Trustee shall make, execute and deliver such instruments, and make such conveyances and transfer of property as may be necessary or proper in order to carry the same into effect."

purposes, the trust did not become irrevocable until that date.

The question before us is one that is not new or novel, but it is one on which there is a split of authority between courts of equal persuasiveness. Smith v. United States, 139 F.Supp. 305, 134 Ct.Cl. 136 (1956), in a full and exhaustive opinion, held flatly that § 811(c) (1) (B) of the Internal Revenue Code of 1939 (the predecessor of present § 2036(b) of the Internal Revenue Code of 1954, as amended) had no application to transfers in trust which were not complete and irrevocable prior to March 4, 1931. There was a vigorous dissent by Judge Laramore in which one other judge concurred, but the majority view in the Smith case has been followed in Studebaker v. United States, 195 F.Supp. 841 (N.D.Ind.1961), modified, 211 F.Supp. 263 (1962).

On the other hand, the Tax Court in Estate of Robert J. Cuddihy, 32 T.C. 1171 (1959); Estate of Ellis Branson Ridgway, 33 T.C. 1000 (1960), aff'd., 291 F.2d 257 (3 Cir. 1961); Estate of Ellie G. Canfield, 34 T.C. 978 (1960), aff'd., 306 F.2d 1 (2 Cir. 1962); and Estate of Newcomb Carlton, 34 T.C. 988 (1960), rev'd. on other grounds, 298 F.2d 415 (2 Cir. 1962), has consistently expressed disagreement with the holding in Smith, although in each case, prior to the instant one, the Tax Court distinguished Smith on the ground that Smith, like the case at bar, concerned a trust revocable in favor of the settlor until after March 4, 1931, while the cases before the Tax Court concerned cases in which the transfer in trust was irrevocable prior to March 4, 1931, in the sense that the settlor could revoke the trust only for the benefit of others but not for himself.[5]

At the appellate level, in Commissioner of Internal Revenue v. Estate of Ridgway, 291 F.2d 257 (3 Cir. 1961),

the Third Circuit Court of Appeals distinguished Smith, but added "in any event, we think that Judge Laramore's dissenting opinion expresses the better view." 291 F.2d, at 262. The Second Circuit in Commissioner of Internal Revenue v. Estate of Canfield, 306 F.2d 1 (2 Cir. 1962), also distinguished Smith, but stated that if not distinguishable, it would not be followed. However, the Second Circuit further stated that it left open the question of what result would be reached "in a case involving a trust revocable by the settlor acting * * * in conjunction with a nonadverse party"—the precise question before us in the present case. 306 F.2d, at 8.

We are persuaded by Smith and Studebaker and conclude to follow them. We refer to them for a fuller discussion of the reasons for their result, but we also summarize the reasons which lead us to agree.

The primary difficulty that other courts have had with the Commissioner's contention that § 2036(b) is inapplicable to revocable trusts is that its acceptance introduces lack of uniformity to be afforded the meaning of the word "transfer" as used generally in the tax laws, and particularly in subsections (a) and (b) of § 2036. See, e. g., Smith v. United States, 139 F.Supp. 310–311, 134 Ct.Cl. 136 (dissenting opinion). Normally, only one meaning of a word is used in one section of a statute and, certainly, artful draftsmanship and proper judicial construction should seek to avoid a contrary conclusion. In the technical area of tax law there is a need for clarity of meaning so that a taxpayer, in conducting and planning his actions, may rely upon the words of a statute as written, or as construed in analogous contexts. However, these considerations are not of paramount importance, nor do they present insurmountable hurdles, if there is a clear indication that the intention of

---

5. We express no view as to whether the distinction is valid.

Congress requires a different result. Indeed, the factor of reliance is entitled to little weight in this case. No longer may a pre-March 4, 1931 trust be established so that only on the very limited question of whether a retained life estate should be released to reduce estate taxes could § 2036(b) be relevant to tax planning.

Our examination of the background, context and expressed legislative intent in regard to the enactment of § 2036(b) lead us to conclude that it is applicable only to trusts having reserved life estates but irrevocable on March 4, 1931, and that we should give it that effect. We state these factors:

Under pre-1931 law the corpus of a revocable trust under which a life interest in the income was retained was includable in the settlor's gross estate. See, e. g., Reinecke v. Northern Trust Co., 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410 (1929). But, in May v. Heiner, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826 (1930), the Supreme Court held that the mere retention of a life interest in an irrevocable trust was not sufficient to bring the corpus of the trust into the settlor's gross estate. On March 3, 1931, the day after three *per curiam* decisions of the Supreme Court[6] had made the implications of the *May* case apparent, Congress passed a Joint Resolution which altered the statutory scheme to bring the corpus of an irrevocable trust with a reserved life interest into the settlor's gross estate.[7] However, this Joint Resolution did not make totally unimportant the distinction which had theretofore been made between revocable and irrevocable trusts, because it was construed only to apply to trusts created after the date of its enactment. Hassett v. Welch, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858 (1938).

The Supreme Court wrought a total change in these circumstances in January, 1949, when, in Commissioner of Internal Revenue v. Estate of Church, 335 U.S. 632, 69 S.Ct. 337, 93 L.Ed. 330 (1949), it overruled May v. Heiner, supra, and held that even without the Joint Resolution of March 3, 1931, the corpus of a pre-March 4, 1931, irrevocable trust with a reserved life estate was includable in the settlor's gross estate. In October, 1949, Congress, in response to the *Church* decision, passed the Technical Changes Act of 1949, c. 720, 63 Stat. 891, which included the exception, now embodied in § 2036(b), of pre-March 4, 1931 transfers from the retention-of-income provision of the estate tax law. The clear intent of Congress in engrafting this exception upon the law was to correct the manifest unfairness worked by the *Church* decision upon those who had relied upon the pre-1931 law in setting up irrevocable trusts with a retained life estate. This intent is made plain in the explanatory report of the Senate Finance Committee, set forth in the margin.[8]

6. Burnet v. Northern Trust Co., 283 U.S. 782, 51 S.Ct. 342, 75 L.Ed. 1412 (1931); McCormick v. Burnet, 283 U.S. 784, 51 S.Ct. 343, 75 L.Ed. 1413 (1931); Morsman v. Burnet, 283 U.S. 783, 51 S.Ct. 343, 75 L.Ed. 1412 (1931).

7. At this time Congress recognized that the prior court decisions had made a distinction between revocable and irrevocable trusts, and that the Joint Resolution was directed only at the latter. In the House Report accompanying proposed 1932 amendments to the Joint Resolution of March 3, 1931, it was stated that the "Joint Resolution was designed to avoid the effect of the decisions of the Supreme Court holding such a transfer [a transfer under which the decedent has reserved an interest in the income for life] not taxable if *irrevocable* and not made in contemplation of death." (emphasis added.) H.Rep.No. 708, 72nd Cong., 1st Sess., p. 46.

8. "Section 7, which your committee had added to the House bill, amends section 811(c) of the Internal Revenue Code (relating to the estate tax treatment of transfers in contemplation of, or intended to take effect in possession or enjoyment at or after, the decedent's death) to provide that property transferred before March 4, 1931, shall not be included in the transferor's gross estate by rea-

Particularly significant is the statement that "your committee believes that the Congress should act to restore the estate tax law to what it was prior to the Church opinion." We think that Congress understood the law to be as it has been outlined above, having expressly recognized that the 1931 Joint Resolution was concerned only with irrevocable trusts,[9] and, therefore, in the eyes of Congress, the restoration of the law as it existed before *Church* involved only providing for the exclusion of pre-March 4, 1931, irrevocable trusts from the operation of the retention-of-income provision of the estate tax law.

That this was the Congressional intent is further indicated by another section of the Technical Changes Act of 1949, which is unnecessary under present law and has been deleted, but which is nevertheless helpful in determining the intended scope of the exception contained in § 2036(b). The 1949 Act, unlike the present law, did not provide for the blanket exclusion of all pre-March 4, 1931 transfers regardless of the settlor's date of death; it was not until 1953 that this provision was enacted. Technical Changes Act of 1953, § 207, ch. 512, 67 Stat. 615. Rather, under § 7 of the 1949 Act, the corpus of a pre-March 4, 1931 trust was excluded from the settlor's gross estate only if he died before January 1, 1950. However, in § 8 a transitional period was provided for by allowing those persons who had created a trust with a reserved life estate before March 4, 1931, to release their life estate during 1949 or 1950 without

son of the fact that he retained an estate for his life in the transferred property.

\* \* \* \* \*

In the joint resolution of March 3, 1931, Congress created a new estate tax rule with respect to transfers after March 3. It left unchanged the rule in effect for transfers before that date. It is the opinion of your committee that the old rule should have been continued in effect with respect to such transfers until changed by legislation. Since the rule has been changed by the Supreme Court in the Church opinion, *your committee believes that the Congress should act to restore the estate tax law to what it was prior to the Church opinion.*

Some persons might have surrendered their life estates after 1931 had they not relied on the interpretation of the estate tax law which has now been overruled and in some cases considerable hardship may result from application of the new interpretation presented in the Church case. It is the opinion of your committee that after all of these years these persons are entitled to rely upon the long standing interpretation in May v. Heiner, and the proposed amendment is accordingly intended to assure that result. While the Treasury has proposed regulations which would relieve, in some cases, the hardship arising from application of the Church opinion, it would be beyond the power of the Treasury to alleviate the full effects of this opinion, and legislation is necessary to accomplish this.

The operation of the amendment made by this section may be illustrated by the following example: A, in 1928, transferred property in trust retaining a life estate and giving the remainder indefeasibly to B and his heirs. Since the transfer was made before March 4, 1931, and *the only right or interest retained by the decedent in the property consists of an estate for his life,* the transfer is not "intended to take effect in possession or enjoyment at or after his death" within the meaning of section 811(c) as amended by this section of the bill. Hence, the property is not includible in the gross estate unless the transfer was made in *contemplation of death or unless the property falls within some other subdivision of section 811.*

*The amendment made to section 811 (c) by this section of the bill does not, however, similarly change the estate-tax treatment of a transfer made before March 4, 1931, in case the decedent retained both a life estate and some other right or interest in the transferred property.* Thus, assume that A, in 1928, transferred property in trust retaining a life estate and giving the remainder to B if living at A's death. In this case, since the property will revert to A by operation of law if he should survive B, A has retained more than a life estate. Accordingly, this section of the bill does not relieve A's estate from liability under the estate tax with respect to this property." (emphasis added.) S.Rep. No. 831, 71st Cong., 1st Sess., pp. 293–294.

9. See footnote 7, supra.

paying a gift tax thereon and by providing that such a release would not be deemed to have been made in contemplation of death.

For present purposes, the significance of § 8 is that it contained an exception clause specifically excluding revocable trusts from its operation. Thus, Congress again distinguished between revocable and irrevocable trusts and indicated that it contemplated that only the latter were to be excluded in the valuation of a settlor's gross estate. Otherwise, it would have opened the same escape route provided in § 8 to settlors of revocable trusts as it did to settlors of irrevocable trusts.[10]

In light of this overwhelming evidence that Congress intended in § 2036(b) to exclude only irrevocable pre-March 4, 1931 trusts from the operation of § 2036(a), we conclude that the word "transfer" as used in § 2036(b) means "became irrevocable." So to construe it accomplishes the Congressional purpose; that purpose, in this instance, must prevail over the literal reading of the word. Markham v. Cabell, 326 U.S. 404, 409, 66 S.Ct. 193, 90 L.Ed. 165 (1945); Cawley v. United States, 272 F.2d 443, 445 (2 Cir. 1959).

The decision of the Tax Court is Reversed.

10. In his dissenting opinion in Smith v. United States, 139 F.Supp. 305, 310, 134 Ct.Cl. 136 (1956), Judge Laramore relied upon the exception clause to § 8 to support the view, contrary to our own, that Congress intended all pre-March 4, 1931 trusts to be excluded from the retention-of-income section. Judge Laramore reasoned that by virtue of the exception clause, revocable transfers would be subject to the estate tax if the settlor's power to revoke were released in contemplation of death, and this proviso would have no meaning if Congress intended that revocable transfers were to be included in the settlor's gross estate "regardless of whether the power were released in contemplation of death." 139 F.Supp. at 311. Judge Laramore was mistaken in concluding that § 8 spoke to the release of the power of revocation; it was concerned only with the release of the life estate. However, a more fundamental fallacy in his reasoning is that a negative inference can properly be drawn from § 8 only in the situation where there has in fact been a release. Of course, § 8 does imply that if the life estate is released and this release is not made in contemplation of death, the corpus of the trust will not be included in the settlor's gross estate. But as a matter of logic § 8 does not necessarily imply that where the life estate is retained as of the date of the settlor's death the corpus of the trust is excludable, and as a matter of fact it could not so imply since under § 7 of the 1949 Act, regardless of the nature of the trust, if the life estate were retained after December 31, 1949, and on the date of the settlor's death, the corpus of the trust would be included in his gross estate.