# Richmond

ELMER W. SOMERS, TRUSTEE, AND CHARLES A. GIBBONS V. WRENDO M. GODWIN, COMMITTEE FOR NORMAN R. WESSELLS.

December 6, 1943.

Record No. 2719.

Present, Campbell, C. J., and Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Ernest Ruediger,* for the appellants.

*George L. Doughty,* for the appellee.

SPRATLEY, J., delivered the opinion of the court.

This appeal brings under review a decree of the trial court ordering and directing Elmer W. Somers, trustee, under a deed of trust, to execute and deliver to Wrendo M. Godwin, committee for Norman R. Wessells, a deed of real estate sold under foreclosure proceedings at public auction, Godwin, committee, being the last and highest bidder therefor.

The appellants contend, first, that Godwin, committee, did not comply with the terms of sale as set forth in the ad-

vertisement of sale, and, second, that the purchase of the property by the committee would have converted his ward's estate from personalty to realty, and this he had no legal right to do without the sanction of a court of competent jurisdiction.

The evidence was taken *ore tenus* before the trial court. In support of the decree it may be briefly summarized as follows:

In 1919, Somers, an attorney at law, qualified in the Circuit Court of the county of Accomack, Virginia, as committee for Norman R. Wessells, an insane veteran, about fifty-one years of age, and unmarried.

There came into the hands of Somers a considerable amount of intangible personal property belonging to his ward. Somers invested these funds from time to time until 1938.

In 1936, a farm in Accomack county, hereinafter referred to as the "William J. West Farm," containing about 36.45 acres, was sold at public auction for the sum of $1,908, and bid in by Clara E. West. She refused to comply with the terms of sale, and the farm was conveyed, at the same price, to Margaret M. Somers, wife of Elmer W. Somers. On January 1, 1938, the farm was again sold and was bought by William J. West, the former owner, at the price of $1,908. On that date there had accumulated in the hands of Somers, committee, bonds of his ward, Norman R. Wessells, aggregating the face value of $5,000, which, on account of a real estate depreciation or bad investments, had become of much less worth. Somers, as committee, had West, the purchaser of the farm, execute a deed of trust to Somers, trustee, securing a $5,000 bond of even date therewith, made by West, as the first lien thereon, payable to Somers, as committee of Wessells. Somers explained that he exchanged the depreciated bonds of his ward of the face value of $5,000 for the new bond of West in the sum of $5,000. No interest has been paid on this bond. Somers, at the same time, also took a second lien on the same property securing

the sum of $2,500. It is not explained why West agreed to bind himself and his property to such an extent.

Somers, in 1940, resigned as commitee for Wessells, and Wrendo M. Godwin was appointed in his place and stead.

The $5,000 bond of West was included in the assets coming into the hands of Godwin, committee. Godwin made several efforts to have Somers, trustee, sell the property because of default in the payment of the bond. The sale was delayed from time to time, partly because of the bankruptcy of the debtor, West; but was finally offered for sale on September 5, 1942.

The terms of the sale as advertised were as follows:

"25% of the purchase money will be required in cash on the day of sale, with the privilege of the purchaser to pay as much more thereof on the day of sale as he may desire, and the balance not so paid on the day of sale will be divided into three equal installments payable in one, two and three years, respectively, from the day of sale with interest at the rate of six per cent per annum on the unpaid balance from that date until paid, the unpaid balance to be secured by the bond or bonds of the purchaser, with approved personal security, until the whole of the purchase money is paid.

"Possesion of the property will be given the purchaser on January 1, 1943.

"The property will be at the risk of the purchaser from the time it is bid off by him, and the purchaser will be required to keep the buildings on said real estate properly insured, with loss payable to the undersigned trustee as his interest may appear.

"All taxes will be paid on the property by the trustee to January 1, 1943.

"Upon payment of the full amount of the purchase price, a deed, with special warranty of title, will be given the purchaser by the undersigned Trustee, which deed shall be made at the expense of the purchaser, including revenue stamps thereon."

Godwin says he was instructed by the United States Veterans Administration, a department of the Federal govern-

ment, to which he was required to submit his accounts as a fiduciary, to bid on the property.

The sale was well attended. Immediately after the reading of the advertisement, Somers made an announcement that whoever bid in the property, whether a bondholder or anyone else, would have to comply with its terms on that day. There were three or four bidders on the property, until the sum of $1,600 had been reached. Thereafter the bids rose in small amounts of $5 and $10, until Godwin became the last and highest bidder at the sum of $2,525, the appellant, Charles A. Gibson, bidding $2,520.

The testmony as to what occurred thereafter is directly in conflict between Somers and Godwin. Godwin testified that he offered to pay immediately the cost of the sale, including the commissions, taxes, and advertisement, by check, as soon as the amount was stated to him by the trustee, and offered the $5,000 bond of January 1, 1938, secured by a first lien on the property, in payment of the purchase price. Somers refused to allow Godwin to follow this procedure, and at the same time and place directed the auctioneer to offer again the property for sale to the highest bidder. However, before it was offered for sale the second time, Godwin made a public announcement, in the hearing of Charles A. Gibbons, that he had bought the property for his ward, Norman R. Wessells, and was ready to comply with the terms of the sale, and that if his bid was not accepted, he would immediately bring legal proceedings to require the trustee to accept it and execute a deed to him for the property.

At the second offering of the property, it was knocked down to Charles A. Gibbons at the price of $1,900. Godwin refrained from bidding. The auctioneer testified that, prior to the first sale, Somers instructed him to put in bids for Margaret M. Somers until the property reached $1,600. Gibbons paid the trustee one-fourth of the amount of $1,900 in cash, and delivered to the trustee three personal notes for the balance, payable in one, two and three years

after date. The notes did not bear the personal security required by the terms of sale.

There was evidence that on three former occasions Godwin, in buying property sold by Somers, as trustee, had paid for it by putting up cash to cover the cost of sale, etc., and endorsing a credit for the balance on bonds secured by a lien on the property, which he held in a fiduciary capacity. Somers admitted he treated such former transactions as cash sales; but disclaimed the obligation to be bound to do so again.

Godwin, as committee for Norman R. Wessells, promptly filed the bill in these proceedings against Somers, trustee, and Charles A. Gibbons, praying for an injunction against the execution and delivery of a deed to Charles A. Gibbons or to anyone else for him, and for the entry of a decree requiring the trustee to accept cash in the amount due for taxes, commissions, and expenses incident to the sale, together with the bond of his ward, in payment of the purchase price of the real estate, and execute and deliver a good and sufficient deed for the property to him as committee.

The defendants demurred to the bill, and Somers, trustee, filed an answer, denying its material allegations. The trial court overruled the demurrer and granted a temporary injunction on September 19, 1942. Thereafter Gibbons answered, contending that he had fully complied with the terms of the sale and was entitled to have conveyance made to him as the last and highest bidder for the property in the sum of $1,900.

On November 14, 1942, the trial court entered the decree appealed from, reciting that it appeared to the satisfaction of the court from the evidence that Godwin, committee for Norman R. Wessells, had become the purchaser of the real estate sold on September 5, 1942, for the sum of $2,525, the last and highest bid offered therefor, and "that in bidding on said property, and thus becoming the purchaser, as aforesaid, the said committee was acting for the best interest of the said Norman R. Wessells and for the enhancement and preservation of the estate of his ward."

The temporary injunction was made permanent, and it was further adjudged, ordered, and decreed that Somers, trustee, accept the bond of William J. West, dated January 1, 1938, for $5,000, as a payment on the purchase price, together with a sum of money sufficient to pay the taxes on the said real estate through the year 1942, the legal commissions to said trustee, cost of making up his trust account, and cost of sale and its advertisement, which should be deemed in full compliance with the terms of the said sale, and execute and deliver to the said committee for Norman R. Wessells, a deed to the real estate, with special warranty of title, upon receipt by him of the payments above provided.

The oral announcement of the trustee that, no matter who bid in the property, whether bondholder or anyone else, the terms of the sale would have to be complied with, added nothing to the published terms. The sale was for the protection of the bondholder to the extent of his lien. The bid of the bondholder, a first lien creditor, according to the record, was less than the amount of his lien, and he offered to pay in cash all of the costs of the sale, including the trustee's commissions. If he had paid the purchase money in cash, he would have been entitled to every penny of it, less the costs of sale, as a credit on the bond. A sale with such a credit is equivalent to a sale for cash. It is a quick, safe, convenient and expeditious procedure in full accord with good business and fair dealing.

There can be no doubt that the trustee knew that the committee was bidding on the property for his ward. The tender of the bond in payment of the purchase made this abundantly clear.

The second contention must be considered in the light of the peculiar facts of this case. It is true that a trustee or guardian cannot, generally, convert his ward's personalty into realty without the previous sanction of the court. The laws of descent and distribution applicable to the two classes of property furnish the reason for the rule. *Boisseau* v. *Boisseau,* 79 Va. 73, 52 Am. Rep. 616.

While we have in Virginia a statute, Virginia Code, 1942, (Michie) section 1055, which provides when and where a committee may petition for the sale, lease, or mortgage of the real estate of his ward, we have no specific statute authorizing a committee to purchase real estate. *Boisseau v. Boisseau, supra,* however, approves the rule that, with the sanction of a court, the property of an infant may be converted by his guardian from personalty into real estate when the conversion appears to be for the ward's benefit.

Virginia Code, 1942, (Michie) section 1054, defining the powers and duties of a committee, provides that he "shall be entitled to the custody and control of the person of his ward (when he resides in the State, and is not confined in a hospital or serving a term of penal servitude), shall take possession of his estate, and may sue and be sued in respect to all claims or demands of every nature in favor of or against his ward, and any other of his ward's estate, * * * . He shall take care of and preserve such estate and manage it to the best advantage; shall apply the personal estate, or so much as may be necessary, to the payment of the debts of his ward, and the rents and profits of the residue of his estate, real and personal, and the residue of the personal estate, or so much as may be necessary, to the maintenance of such person and of his family, if any; and shall surrender the estate, or so much as he may be accountable for, to such person, if he shall be restored, or the real estate to his heirs or devisees, and the personal estate to his executors or administrators, in case of his death without having been restored" to sanity.

In *Shands* v. *Shands,* 175 Va. 156, 7 S. E. (2d) 112, it is said:

"A committee is appointed for the purpose of securing a competent person to manage the property of an incompetent adult. The ownership of the property remains in the incompetent; its management alone is transferred to another for preservation and such wise expenditure as may be most beneficial to the incompetent owner."

The situation here is unlike that of a free and voluntary conversion of personalty into realty. The ward's personal funds were already invested. Its only security was the real estate involved. It became the duty of the successor committee, Godwin, to protect and preserve the funds of his ward in the manner most beneficial to the ward. He was clothed with an implied power under the statute (Code, section 1054) to bid on the property to prevent the trust estate being deprived of its security at less than its fair value. Otherwise it would be unsafe for a fiduciary to invest trust funds upon real estate security. That the property involved in this case was worth approximately the sum of $2,525 is best proven by the offer of Gibbons, under competition, to purchase it for $2,520.

As happened here, however, the trial court, prior to the completion of the sale and transfer of the property, approved and confirmed its purchase by the committee, as for the best interest of the insane person. In this approval, it is sustained by the evidence. Under all of the circumstances of the present case, the spirit of the rule requiring the consent of the court has been observed.

The appellant relies upon *Knight* v. *Watts*, 26 W. Va. 175. The court in that case expressly held that a conveyance of real estate to a committee from his former co-trustee for $1,550, without any authority from any court to make such purchase and the subsequent sale and conveyance of this land without authority from any court for $1,212, taken in connection with certain other acts of the committee, evidenced a total disregard of his duties as a fiduciary and was fraudulent. The facts in that case bear no resemblance to the case at bar.

Wessells is, as we have seen, fifty-one years of age, unmarried, and, so far as the record shows, has never been married, and has never made a will. If he dies without being restored to sanity or unmarried, there will be no difference in the descent or distribution of his property, whether personalty or realty. Virginia Code, 1942, (Michie) sections 5264 and 5273.

If Wessells' estate should retain the ownership of the land in kind until his situation and condition become changed, a court of equity may, if necessary, determine whether it is impressed with the character of personalty.

At the bar of this court, counsel appearing for the appellants did not undertake to exculpate or justify the conduct of Elmer W. Somers, trustee; but contended that Gibobns was not bound thereby.

It is sufficient to say that Gibbons had full knowledge of all the facts relating to the sale of the property, and it is well settled that whenever a fiduciary does any act in breach of his trust, that he, and all those who wilfully and knowingly aid him in the performance of such breach are participators in the offense and stand upon the same footing.

The record clearly shows that Somers has been the guiding spirit in all of the mentioned transactions concerning the West farm. He was an interested party in operating the farm, and apparently personally interested in its sale to a designated person. While denied, there is testimony of a business relationship between him and Gibbons. Instead of cooperating with Godwin, committee, to preserve and protect the estate of the insant person, for whom he, Somers, as the former committee, had made a bad investment, he actively took adverse action. Both as trustee and as former committee, he was charged with the performance of his duties with the highest fidelity and with the utmost good faith and loyalty to the trusts imposed on him. He totally disregarded his duties as a fiduciary. He has been unfaithful to his trust and guilty of breaches that are reprehensible. His conduct has deprived him of the right to compensation as a trustee, for to award him compensation would add further to the loss occasioned his former ward by his ill-advised investment of the latter's funds. *Dearing* v. *Walter*, 179 Va. 620, 20 S. E. (2d) 483.

We are told that William J. West being insolvent, all that may be expected to be gotten out of his bond is the real estate on which it is a first lien. Whether that be true

or not the bond should be credited only, upon conveyance of the real estate to Norman R. Wessells' committee, with $2,525, less a sum sufficient to pay the taxes on the real estate through the year 1942, the cost of advertisement of sale, the fee of the auctioneer, and the cost of filing and verifying the report of the trustee. No commission on the sale should be allowed to the trustee.

In all other respects we affirm the decree of the trial court, and remand this cause for such further proceedings as may be necessary, in accordance with the views herein expressed.

*Affirmed as modified and remanded.*