Archbold VAN BEUREN et al., Plaintiffs, Appellants,

v.

Martin M. McLOUGHLIN (Former Acting Collector of Internal Revenue), et al., Defendants, Appellees.

No. 5396.

United States Court of Appeals First Circuit.

Dec. 12, 1958.

Rehearing Denied Jan. 6, 1959.

William R. Spofford, Philadelphia, Pa., Frederick Lippitt, Providence, R. I., Sherwin T. McDowell, Robert R. Batt, Philadelphia, Pa., Edwards & Angell, Providence, R. I., and Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., on the brief, for appellants.

John J. Pajak, Atty., Dept. of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., and Lee A. Jackson and Grant W. Wiprud, Attys., Dept. of Justice, Washington, D. C., Joseph Mainelli, U. S. Atty., and Arnold Williamson, Jr., Asst. U. S. Atty., Providence, R. I., on the brief, for appellees.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

Appellants are executors of the estate of Mary A. van Beuren, a resident of Rhode Island, who died in 1951. Upon examination of the estate tax return filed by the executors, the Commissioner assessed deficiencies in estate tax, one of which was based upon his determination that there should have been included in decedent's gross estate, pursuant to § 811(d)(2) of the Internal Revenue Code of 1939, the value at the date of her death of the income to be derived from a certain inter vivos trust established by decedent on April 19, 1932. The executors paid the assessed deficiencies and filed claims for refund, which the Commissioner denied on March 7, 1957. Thereafter, the executors duly filed the present complaint in the United States District Court for the District of Rhode Island seeking recovery of the sums asserted to be due in the claims for refund. Named as defendants were the former Acting Collector of Internal Revenue and the District Director of Internal Revenue.

As to certain items, the Commissioner conceded that the plaintiffs were entitled to a refund; and so the district judge gave judgment for the plaintiffs in the sum of $68,235.39, which was the total of the conceded items. But the Commissioner maintained the correctness of his determination as to the inclusion of the trust income, the one issue now in dispute, and the district judge, agreeing with the Commissioner, refused to give plaintiffs judgment for the greater amount claimed in their complaint, and entered a judgment dismissing the complaint "as to any relief in excess of the sum of $68,235.39, together with interest, as provided by law". The plaintiff executors then took the present appeal from the aforesaid judgment.

In enacting § 811(d)(2), the Congress was concerned to prevent an avoidance of the estate tax by the device of creating an inter vivos trust that purported to give away an interest, but where the grantor reserved in his own hands certain threads of control which rendered the gift in effect ambulatory until the date of the grantor's death.

Section 811(d)(2) is sweeping, and perhaps ruthless, in its application. It does not depend upon finding a motive of tax avoidance. Nor does it depend upon whether the grantor ever attempted to exercise the power; it is the existence of the power, not its exercise, that is important. Nor does it matter that the power is reserved to the grantor not in his capacity as grantor but only in a fiduciary capacity. See Welch v. Terhune, 1 Cir., 1942, 126 F.2d 695, certiorari denied 1942, 317 U.S. 644, 63 S.Ct. 37, 87 L.Ed. 519. And, as we held in Chickering v. Commissioner, 1 Cir., 1941, 118 F.2d 254, 139 A.L.R. 508, certiorari denied 1941, 314 U.S. 636, 67 S.Ct. 70, 86 L.Ed. 511, it does not matter that the reserved power of amendment is a limited power under which the grantor in no event could revest in herself the donated interest but could only apportion the trust income and corpus among her children or disinherit them wholly or in part, in favor of other persons. Nor does it matter, so far as the estate tax is concerned, that the described power is reserved by the grantor only in conjunction with the consent of

some other person, whether or not that other person has some interest in the trust adverse to the exercise of the power. Cf. Higgins v. Commissioner, 1 Cir., 1942, 129 F.2d 237, 239, certiorari denied 1942, 317 U.S. 658, 63 S.Ct. 57, 87 L.Ed. 529. As explained in Helvering v. City Bank Farmers Trust Co., 1935, 296 U.S. 85, 90, 56 S.Ct. 70, 73, 80 L.Ed. 62:

> "The purpose of Congress in adding * * * to the section as it stood in an earlier act was to prevent avoidance of the tax by the device of joining with the grantor in the exercise of the power of revocation someone who he believed would comply with his wishes. Congress may well have thought that a beneficiary who was of the grantor's immediate family might be amenable to persuasion or be induced to consent to a revocation in consideration of other expected benefits from the grantor's estate. Congress may adopt a measure reasonably calculated to prevent avoidance of a tax. The test of validity in respect of due process of law is whether the means adopted is appropriate to the end. A legislative declaration that a status of the taxpayer's creation shall, in the application of the tax, be deemed the equivalent of another status falling normally within the scope of the taxing power, if reasonably requisite to prevent evasion, does not take property without due process."

■ This brings us to a consideration of the terms of the trust indenture created by the decedent in 1932. In that trust Mrs. van Beuren conveyed certain enumerated personal property, consisting of stocks and bonds, in trust to the Fiduciary Trust Company of New York. At the time of her death the corpus of the trust was valued at $6,278,445.13. It is conceded, however, that the value of the corpus is not includable in her gross estate, since the only power of amendment in the trust was limited by a proviso "that no * * * change or amendment shall effect any revocation,

in whole or in part, of the trust hereby created or alter the provision for distribution upon the termination of the trust"; and there was no provision for anticipatory payment of principal. See Commissioner of Internal Revenue v. Bridgeport City Trust Co., 2 Cir., 1941, 124 F.2d 48, certiorari denied 1942, 316 U.S. 672, 62 S.Ct. 1042, 86 L.Ed. 1747; Estate of Albert E. Nettleton, 1945, 4 T.C. 987. The only question before us is the propriety of inclusion of the value of the income of the trust, which is agreed to be $979,080.84, pursuant to the requirements of § 811(d)(2) of the 1939 Code, which provides in relevant part:

> "Sec. 811. Gross estate.
>
> "The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible * * *.
>
> "(d) Revocable transfers * *
>
> "(2) Transfers on or prior to June 22, 1936. To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke * * *."

The trust contained the following provision for amendment:

> "Sixteenth: This agreement or any of the terms thereof may be changed or amended during the life of the trust with the consent of the Trustee and the adult Beneficiaries or adult Beneficiary then receiving the income by an instrument in writing duly executed by the Trustee and such Beneficiary or Beneficiaries. Provided, however, that no such change or amendment shall effect any revocation, in whole or in part, of the trust here-

by created or alter the provision for distribution upon the termination of the trust. * * * "

The district judge construed the word "consent" in this language of Article Sixteenth as meaning "that the trust agreement or any of its terms could be amended by the decedent grantor if consent thereto was first given by the trustee and the adult beneficiaries or beneficiary. In other words, it was amendable by the decedent as grantor with their consent."

Because we are not certain of the correctness of the foregoing ground taken by the district court, we prefer to rest our affirmance of the judgment upon an alternative argument which the government made in the district court and before us, but which the district court in the view it took found it unnecessary to consider. See Helvering v. Gowran, 1937, 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224.

This alternative argument advanced by the government, which we deem to be persuasive, is based upon reading Article Sixteenth in conjunction with a provision in Article Nineteenth of the trust.

The full text of Article Nineteenth is as follows (words deleted by an amendment adopted in 1946 are given in brackets; words added by the 1946 amendment are italicized):

"Nineteenth: *There shall be two Trustees hereunder, one of which shall be an individual and one a corporation qualified to act in such capacity under the laws under which it was created and exists. In the first instance the individual Co-Trustee shall be designated by the Grantor by an instrument under her hand and seal, acknowledged in like manner as a deed to be recorded in the State of New York, and the corporate Co-Trustee shall be the Trustee first above named herein.*

"The Grantor reserves the right at any time by an instrument under her hand and seal, acknowledged in like manner as a deed to be recorded in the State of New York, to remove [the Trustee or] any [other] Trustee [or Trustees] hereunder from the trusteeship hereunder and to appoint a new Trustee or Trustees in the place of the Trustee or Trustees so removed, and thereupon the Trustee or Trustees so removed shall by proper transfer and delivery vest the trust property in the Trustee or Trustees so appointed. Thereafter such successor or successors shall have all the rights, powers and duties which were granted to or imposed upon the Trustee or Trustees so removed under the provisions of this indenture. Upon making any appointment of a new Trustee, the Grantor may make such provision as she shall think fit in respect to the compensation of the Trustee or Trustees appointed and their successors in office or any of them and *shall* provide for the payment of any such compensation, whether out of the capital or income as to the [Grantor] *Trustees* may seem proper. Upon the death of the Grantor the foregoing power of removal and appointment shall vest in Archbold van Beuren for the remainder of the trust term."

The grantor thus reserved an unrestricted (although unused) power to remove a trustee and replace him. This is an extremely potent power, even if she could not substitute herself, as the Tax Court pointed out in Warren H. Corning, 1955, 24 T.C. 907, 915:

"[P]etitioner could substitute an independent corporate trustee after first ascertaining that such trustee would follow his directions. Should this corporate trustee subsequently fail to follow his instructions, petitioner could then replace it with another. Petitioner's power to substitute trustees was subject to no restrictions and, in practical terms,

gave him the broad powers possessed by the trustee."

We are unaware of any New York case indicating whether in this situation the grantor would have had the power to make herself a trustee. In the absence of any restriction of her power, it seems likely that the grantor could have appointed herself, and counsel for the taxpayers conceded to the court in oral argument that she could have.

It does not seem to us to be significant, in the context of § 811(d), that the power to alter or amend would require the grantor to take two steps, instead of one, for its exercise; that is to say, that the grantor would have first to exercise the power under Article Nineteenth to remove a trustee and substitute herself as trustee, and then, under Article Sixteenth, would have power, as trustee, to alter or amend the terms of the trust in conjunction with other persons. In this connection we note another provision of § 811 of the 1939 Code. In § 811(d)(3) (53 Stat. 121) it is provided:

"For the purposes of this subsection the power to alter, amend, or revoke shall be considered to exist on the date of the decedent's death even though the exercise of the power is subject to a precedent giving of notice or even though the alteration, amendment, or revocation takes effect only on the expiration of a stated period after the exercise of the power, whether or not on or before the date of the decedent's death notice has been given or the power has been exercised. * * * *"

The requirement that a technical, preliminary step be taken to make the grantor a trustee, if she had an unrestricted power to do so, seems but a requirement of notice by another name, and equally to be disregarded.

Apparently the only case directly in point is Loughridge's Estate v. Commissioner, 10 Cir., 1950, 183 F.2d 294, certiorari denied 1950, 340 U.S. 830, 71 S.Ct. 67, 95 L.Ed. 609. The trust instrument involved in that case provided "that upon written notice from the decedent, the trustee should resign; that such resignation should become effective on the day specified in the notice which should not be less than thirty days after the delivery of the notice; that in case of the resignation of the trustee, the [grantor] * * * should have the power to appoint a successor trustee". (Id., 183 F.2d at page 297) Moreover, the trustee, as such, had power to terminate the trust in whole or in part at any time. The court held that the power to terminate was in effect a power reserved to the grantor, since he could have substituted himself as trustee and then, as trustee, have determined the respective rights of the beneficiaries. It therefore held that the value of the trust was includable in the grantor's gross estate under § 811(d)(2). The dissenting judge was troubled primarily by his doubt that under the New York law the grantor could have effectively substituted himself as trustee (an issue which is conceded in this case) and by the requirement that at least thirty days must elapse before the removal of a trustee should become effective (a factor which is not present in this case).

We do not think that the decision in Loughridge's Estate v. Commissioner can be distinguished on the argument that the power of the grantor in the present case to remove the trustee and substitute herself was subject to the power in Article Sixteenth whereunder the named trustees and present income beneficiaries, acting together, could amend Article Nineteenth so as to eliminate the grantor's unrestricted power to remove a trustee.[1] Assuming for the

1. It is to be noted that this argument assumes the incorrectness of the district judge's interpretation of Article Sixteenth, since obviously, if the grantor's initiative were required for an amendment to be effective, the trustee and beneficiaries would have no power, without the consent of the grantor, to amend Article Nineteenth by eliminating the grantor's power to remove a trustee.

moment that Article Nineteenth is subject to amendment in the manner just suggested, the fact of the matter is that at the date of the grantor's death Article Nineteenth had not been so amended. Furthermore, if it is necessary that the named trustees and beneficiaries forbear from exercising this power of amendment under Article Sixteenth, it seems to be only another kind of requirement for the concurrence of other persons, which the Congress has made irrelevant. See Helvering v. City Bank Farmers Trust Co., 1935, 296 U.S. 85, 90, 56 S.Ct. 70, 80 L.Ed. 62.

A second argument by appellants to avoid the effect of this two-step power in the grantor is that such power was not "reserved" by the grantor, citing White v. Poor, 1935, 296 U.S. 98, 56 S.Ct. 66, 80 L.Ed. 80.

In Welch v. Terhune, 126 F.2d 695, at page 698, we explained the decision of the Supreme Court in White v. Poor as follows:

"White v. Poor, 1935, 296 U.S. 98, 56 S.Ct. 66, 80 L.Ed. 80, was a peculiar case. There the settlor conveyed property to three trustees, one of whom was herself. It was provided that the trust might be terminated at any time either in whole or in part 'by the person or persons who shall then be trustees hereunder'. A year later the settlor resigned as trustee and her daughter was appointed to fill the vacancy. Afterwards the daughter resigned and the settlor was reappointed trustee under a clause of the trust instrument providing that vacancies could be filled by the remaining trustees with the approval of the beneficiaries. The settlor then continued as a trustee until her death. One of the alternative grounds upon which the majority opinion was rested was that the power which the settlor had at the date of her death did not fall within the terms of § 302(d) of the applicable Revenue Act of 1926. The significant and distinguishing

fact in the case was, that when the settlor resigned as trustee she thereby cut the last thread of power which she held over the various property interests created by the trust instrument. The reacquired power she had at her death was not a power retained by her in the original declaration of trust but was given to her 'solely by virtue of the action of the other trustees and the beneficiaries'."

It was to avoid the result in White v. Poor in cases involving transfers made after June 22, 1936, that the provision which now constitutes § 811(d)(1) of the 1939 Code was added. But certainly the fact (if it is a fact) that other persons could enact an amendment of the trust to cut off the existence of the power of the grantor to remove a trustee is not the legal equivalent for purposes of White v. Poor (this being a trust created prior to June 22, 1936) of their having granted the power merely by reason of their failure to repeal it.

But appellants maintain that Article Nineteenth was in fact repealed and superseded by the amendment of the trust in 1946. An examination of the effect of that amendment, which is shown by the foregoing quotation of Article Nineteenth, however, shows that the only changes made in that Article were those necessary to accomplish the purpose of the 1946 amendment—that is, to transfer from the grantor to a newly created individual co-trustee the powers over investments. Except for the addition of the first paragraph in Article Nineteenth, which is not now relevant, the amendments to that Article were merely formal, textual ones. By the express terms of the amending indenture of 1946, it was indeed provided only that "Article Nineteenth shall be *amended to read* as follows:". (Emphasis added.) The 1946 amendment contained no clause to repeal the provisions of Article Nineteenth of the original trust dealing with the power of the grantor to remove a trustee and appoint a new one.

Since the grantor reserved and retained until her death this important string giving her a power over the income of the trust, it follows that the agreed value of the income of the trust should have been included in her gross estate, by virtue of § 811(d)(2) of the 1939 Code.

A judgment will be entered affirming the judgment of the District Court.

On Petition for Rehearing.

PER CURIAM.

Taxpayers have petitioned for a rehearing upon three issues involved in our decision of December 12, 1958. On one of these issues, that opinion relied in part on our understanding that counsel had conceded the grantor's ability under New York law to appoint herself as a substitute trustee; counsel now states that no such concession was intended. We have therefore reconsidered this issue on its merits.

The trust in no way limits the freedom of the grantor to appoint anyone as trustee (or, after 1946, individual co-trustee). The grantor could, under Article Nineteenth, have directed that a trustee appointed by her serve without compensation; the dissenting opinion in Loughridge's Estate v. Commissioner, 10 Cir., 1950, 183 F.2d 294, certiorari denied 1950, 340 U.S. 830, 71 S.Ct. 67, 95 L.Ed. 609, which is the only authority casting doubt on the breadth of her discretion which we have found or to which we have been cited, is thus distinguishable. In the absence of any indication to the contrary, we must hold that New York would follow the generally accepted rule that the settlor may make herself a trustee. See Restatement, Trusts § 100 (1935).

The other points raised were fully and very ably briefed and argued by counsel and were disposed of in our opinion of December 12, 1958.

An order will be entered denying the petition for rehearing.