# Richmond

## William Mason Barnes, Administrator of the Estate of Annie Belle Barnes, Deceased, Et Al. v. Clarence Asa Barnes and Sarah E. Beatley.

June 13, 1966.

Record No. 6227.

Present, Eggleston, C. J., and Spratley, Snead I'Anson, Carrico and Gordon, JJ.

*Marvin F. Cole* (*Lawrence M. Traylor*, on brief), for the appellants.

*W. Tayloe Murphy, Jr.* (*H. Marston Smith; William T. King; Smith, King and Murphy*, on brief), for the appellees.

EGGLESTON, C. J., delivered the opinion of the court.

On October 1, 1963, Clarence Asa Barnes and Sarah E. Beatley filed their bill in equity against William Mason Barnes, administrator of the estate of Annie Belle Barnes (also known as Annabelle Barnes), deceased, and others, alleging that on November 19, 1922, William F. Barnes died leaving a will in which he bequeathed to his wife, "Annabelle Barnes as long as she lives or remains" his widow, all of his real and personal property, "to use and dispose of as she may deem best," and that "in the event of the death or marriage" of his wife, all of his estate, "both real and personal," should be divided between his wife and his seven named children, "share and share alike;" that the testator was survived by two children of a previous marriage, the plaintiffs Clarence Asa Barnes and Sarah E. Beatley, and by five children of his marriage with "Annabelle" Barnes; that upon the death of William F. Barnes his widow took possession of all of the property, both real and personal, of which he died seized and possessed, and during her lifetime sold the real estate.

The bill further alleged that "Annabelle" Barnes died in 1962 and William Mason Barnes qualified as administrator of her estate; that according to the inventory filed by the administrator, at the time of her death Mrs. Barnes had in her "possession" cash in bank, certain shares of stock and a bond, the total value of which was $37,340.76; that this personal property constituted assets of the estate of William F. Barnes, deceased, which should be distributed to the plaintiffs and the other children of William F. Barnes under the terms of his will.

It was also alleged that on February 17, 1928, "Annabelle" Barnes had fraudulently induced Sarah E. Beatley, one of the plaintiffs, to execute an instrument whereby she had released to Mrs. Barnes all of her interest in the estate of her father, William F. Barnes; that on January 26, 1959, Mrs. Barnes, through her agent, had by fraudulent misrepresentations induced the plaintiff, Clarence Asa Barnes, to release to her all of his interest in the estate of his father, William F. Barnes.

The prayer of the bill was that William Mason Barnes, administrator of the estate of "Annabelle" Barnes, deceased, and her children be made parties defendant to the cause; that an administrator of the estate of William F. Barnes, deceased, be appointed; that the property which was in the possession of Mrs. Barnes at the time of her death be declared to be the assets of the estate of William F. Barnes and distributed in accordance with the terms of his will; and that the instruments executed by Sarah E. Beatley and Clarence Asa Barnes, whereby they had released their respective interests in the estate of William F. Barnes, deceased, be rescinded and declared of no legal effect.

After the defendants had answered, the case was heard by the trial court on the deposition of a single witness and other evidence adduced in open court. A plea of the statute of limitations tendered by the defendants was overruled. The court entered a decree rescinding the instruments whereby Sarah E. Beatley and Clarence Asa Barnes had released their respective interests in the estate of William F. Barnes, and holding that they were entitled to share in the estate of their father. It also held that the net assets in the hands of the administrator of the estate of "Annabelle" Barnes "are identifiable as assets and funds derived from the estate of William F. Barnes, deceased," and should be distributed in accordance with the terms of his will. From this decree William Mason Barnes, administrator, and the other defendants have appealed.

The main contentions of the appellants are that the trial court erred in (1) decreeing the rescission of the instruments whereby Sarah E. Beatley and Clarence Asa Barnes had released their respective interests in the estate of William F. Barnes, deceased, and (2) rejecting their plea of the statute of limitations.

The factual background was properly stated in the bill of complaint which has been summarized. These additional facts are material: Sarah E. Beatley testified that in 1928 she and her husband were indebted to Annie Belle Barnes in the sum of $1,200, evidenced by

a note secured by a first lien deed of trust on a farm owned by the Beatleys. This note was past due and Mrs. Barnes told the Beatleys that unless it was paid she would foreclose the deed of trust. After some negotiations it was agreed that the Beatleys would pay $200 on account of the note and that the balance of $1,000 would be released upon their executing and delivering to Mrs. Barnes an instrument releasing the interest of Mrs. Beatley in the estate of her father, William F. Barnes, deceased. Pursuant to this agreement, the Beatleys executed and delivered a deed of release dated February 17, 1928 to this effect. There is no evidence that prior to the institution of the present suit some 34 years later, any complaint was made that this release had been procured through fraud on the part of Mrs. Barnes.

Clarence Asa Barnes testified that early in 1959 he received through the mail at Chester, Pennsylvania, where he was then residing, a contract to be signed by him whereby he agreed, in consideration of the sum of $1,000, to release to "Annabelle H. Barnes" all of his interest in the personal estate of his father, William F. Barnes, deceased. This contract had been prepared by Henry S. Hathaway, an attorney at law practicing at Reedville, Virginia, at the request of William M. Barnes, a son of William F. and Annie Belle Barnes. Before executing the contract, Clarence Asa Barnes sought the advice of his attorney, Louis A. Bloom, a member of the bar at Chester. Under date of January 19, 1959, Bloom wrote Hathaway as follows:

"I have been consulted by Clarence A. Barnes, a resident of this city, with reference to the contract prepared by you, under the terms of which he is offered $1,000 as his part and share of the Estate of William F. Barnes, Deceased.

"Before I can properly advise him regarding this Agreement, it will be necessary for me to know the value of the entire estate of Mr. Barnes at the time of his decease and the present valuation.

"I note that reference is made to the personal estate. Will you please advise me the present status of the real estate holdings of Mr. Barnes.

"With this information before me, I can then further discuss the matter with Mr. Barnes and advise you regarding same."

To this letter Hathaway replied under date of January 20, 1959:

"Mr. Clarence A. Barnes is the son of Mr. William F. Barnes by his first wife, who died before Mr. Barnes. At Mr. Barnes' death he left all of his property to his wife for life, with the right and

power to use, sell and convey, etc., any or all of the property, real or personal, and at his death the undisposed property went to his children in equal shares. Mrs. Barnes has sold the real estate that her husband owned at his death, and the remainder of his estate consisted of farm equipment, etc., which was sold and the money paid to Mrs. Barnes. Mrs. Barnes is under no obligation to leave your client anything, and if nothing is done, I doubt very much that he will get anything when she dies. I understand that the reason she wants to do this is that she did the same for Clarence Barnes' whole sister some years ago when she needed money in regard to the payments on her home. As you no doubt know, Clarence A. Barnes would inherit nothing from his stepmother, and I am somewhat doubtful that he could claim a share in the money that Mrs. Barnes received from the sale of the farm at her death if anything is left. I will say, however, that a life estate with the power to use, etc., is not a fee simple in Virginia. The Court of Appeals, prior to 1908, held that a life estate with an absolute power of disposal was a fee simple estate, but in 1908 the legislature passed a statute abolishing this rule and providing that the true intent of a will should not be defeated.

"If you wish a copy of the will you can obtain it from Mrs. Emeline A. Hall, Clerk of the Circuit Court of Northumberland County, Virginia, Heathsville, Virginia."

Clarence Asa Barnes further testified that on the basis of this correspondence Bloom advised him to execute the contract, and that he did so. Bloom returned the copy of the executed contract to Hathaway and the stated consideration of $1,000 was paid by Mrs. Barnes. Except for this exchange of letters no further inquiry was made by Clarence Asa Barnes, or anyone on his behalf, as to the nature or value of the estate of his father, or what assets his stepmother held which might have been derived from that estate and in which he might have an interest.

Under the terms of the decree appealed from the trial court held "that Annabelle Barnes as the life tenant with the power of disposition under the said will was in a fiduciary relationship with the remaindermen under said will so long as any assets remained." Based on this premise it further held that the transactions whereby Mrs. Barnes acquired the respective interests of the remaindermen, Sarah E. Beatley and Clarence Asa Barnes, in the estate of William F. Barnes, deceased, were presumptively fraudulent and invalid; that the burden was on the defendants to rebut this presumption by

showing that they were procured without fraud, and that having failed to carry this burden, the transactions should be declared invalid and rescinded.

We do not agree with this holding. The authorities agree that while the relationship between a life tenant and a remainderman is frequently termed that of a trustee or quasi trustee, the life tenant is a trustee only in a limited sense in that he cannot injure or dispose of the property to the injury of the rights of the remainderman. 31 C. J. S., Estates, § 34, pp. 60, 61; 33 Am. Jur., Life Estates, etc., § 217, pp. 700, 701. See also, *Graham* v. *Smith*, 170 Va. 246, 254, 196 S. E. 600, 604.

As is said in 33 Am. Jur., Life Estates, etc., § 217, p. 701: "[N]o such fiduciary relations exist between a life tenant and his remainderman as to make applicable to their transactions the rules of equity which govern trustees and cestuis que trust, and thus to preclude the life tenant from acquiring by gift or purchase from the remainderman his estate in remainder." See also, 31 C. J. S., Estates, § 34, p. 63. The cases cited fully support the texts.

These principles are clearly stated in *Mallett* v. *Hall*, 129 Me. 148, 150 A. 531, which appears to be a leading case and is frequently cited in texts dealing with the subject. There it was said:

"It has been convincingly pointed out, that the life tenant is a trustee for the remainderman only in a limited sense. The trust is not pure, but only quasi. 2 Perry on Trusts, § 540. The life tenant is a trustee for the benefit of the remainderman only in the sense that the duty rests upon him merely to have due regard for the rights of those in remainder. *Hardy* v. *Mayhew*, *supra*. The relation is in the nature of a trust. *Smith* v. *Daniel*, 2 McCord, Eq. (S.C.) 143, 16 Am. Dec. 641. The life tenant holds the corpus of the estate in trust in the sense that he must exercise reasonable precautions to preserve the property intact for transmission to the remainderman at the termination of the life estate, and may not injure or dispose of it to his detriment. *Gibson* v. *Brown*, 62 Ind. App. 460, 110 N.E. 716. And it is held that no such fiduciary relations exists between a life tenant and his remainderman as to make applicable to their transactions the rules of equity which govern trustees and cestuis que trustent, and preclude the life tenant from acquiring by gift or purchase from the remainderman his estate in remainder. * * * " 150 A. at 534.

See also, *Muzzy* v. *Muzzy*, 364 Mo. 373, 261 S. W. 2d 927, 932.

In the *Mallett* case it was further held that the relation of life

tenant and remainderman is insufficient, as a matter of law, to establish a confidential relation which compels a presumption of the invalidity of a gift from the remainderman to the life tenant. 150 A. at 534.

Based on these authorities and others cited in the texts referred to, we think the trial court was in error in holding that because of the relationship between the life tenant, Annie Belle Barnes, and the remaindermen, Sarah E. Beatley and Clarence Asa Barnes, the transactions whereby she acquired the interests of these remaindermen in the estate of their father were presumptively fraudulent.

It is elementary that in the absence of a relationship where fraud is presumed, the allegation of fraud in the procurement of a contract must be proven by evidence which is clear, cogent and convincing. 8 Mich. Jur., Fraud and Deceit, § 55, pp. 743, 744. That principle applies in the present case.

According to the testimony of Sarah E. Beatley, the consideration for the release of her interest was the agreement of Mrs. Barnes to discharge to the extent of $1,000, the obligation under a note signed by Mrs. Beatley and her husband and held by Mrs. Barnes. This transaction was entirely proper and there is no evidence that it was procured through fraud on the part of Mrs. Barnes.

In his statement of particulars of fraud filed in the cause, Clarence Asa Barnes alleged that his signature to the contract releasing his interest in the estate of his father was procured through the misrepresentations in the letter of Hathaway, attorney and agent for Mrs. Barnes, to the plaintiff's attorney Bloom that Mrs. Barnes had sold and received payment for the real estate and farm equipment which her husband owned at the time of his death and that "Mrs. Barnes is under no obligation to leave your client anything, and if nothing is done, I doubt very much that he will get anything when she dies;" whereas, the truth was that at the time the letter was written Mrs. Barnes had "in her possession as a part of the estate of William F. Barnes," assets of the value of $40,000, in which he, Clarence Asa Barnes, would be entitled to share upon her death.

In its decree the trial court held that "Clarence Asa Barnes was misled by agents of said Annabelle Barnes as to the true value of the assets remaining in the estate of William F. Barnes, deceased, and executed said contract believing said misrepresentations to be true; that a full and complete disclosure of the true value of said estate was not made to said Clarence Asa Barnes."

The obvious basis for this holding was that Hathaway, the agent

for Mrs. Barnes, knew the value of the assets of the estate and willfully failed or refused to divulge such information to Bloom, the attorney for Clarence Asa Barnes.

The trouble with such finding is the entire lack of evidence that Hathaway knew the value of such estate. He testified that at the time he wrote Bloom he "had no knowledge of the value of the estate," and there is no evidence to the contrary. Indeed, in its oral opinion delivered at the end of the hearing, the trial court found that Hathaway "had no idea that this woman had any forty-one thousand dollars." Obviously, if Hathaway had no knowledge of the value of the estate, there was no basis for finding him guilty of fraud in failing to disclose such information.

The court further reasoned that before answering Bloom's inquiry, Hathaway should have investigated the matter and ascertained and disclosed to Bloom the true value of the Barnes estate. We are unaware of any principle which placed such an obligation on Hathaway. Bloom's letter to Hathaway stated that in order for him to advise his client intelligently it was necessary that he "know the value of the entire estate of Mr. Barnes at the time of his decease and the present valuation." But it did not request that Hathaway ascertain and furnish him this information. Bloom's specific request was that Hathaway advise him of the "present status of the real estate holdings of Mr. Barnes." Hathaway replied that Mrs. Barnes had sold the real estate and received the proceeds. This statement was true.

The trial court seemed to reason further that Bloom was misled by Hathaway's statement that he was "somewhat doubtful" that Clarence Asa Barnes "could claim a share in the money that Mrs. Barnes received from the sale of the farm at her death if anything is left." In the first place, this was an expression of opinion as to the correct interpretation of the will of William F. Barnes, deceased. It is well settled that misrepresentations which amount to fraud and justify the rescission of a contract must be positive statements of fact and not mere expressions of opinion. 16 Mich. Jur., Rescission, etc., § 12, pp. 141, 142, and cases there collected.

In the next place, Hathaway's letter did not stop with this expression of opinion of the rights of Clarence Asa Barnes. It pointed out that "a life estate with the power to use, etc., is not a fee simple in Virginia," and that "the true intent of a will should not be defeated." It further suggested that Bloom could obtain a copy of the Barnes will from the clerk of the court, whose name and address were

given. In response to this letter Bloom made no further inquiry of Hathaway as to the matter.

As has been said, the burden was on the plaintiff, Clarence Asa Barnes, to prove by clear, cogent and convincing evidence that Mrs. Barnes, or her agent Hathaway, was guilty of fraud in the procurement of the contract here involved. We find that there is no such proof and consequently the trial court erred in decreeing a rescission of the contract.

The view that we have taken of the matter makes it unnecessary that we consider whether the trial court erred in overruling the defendants' plea of the statute of limitations.

The decree appealed from is reversed and the cause remanded for further proceedings in accordance with this opinion.

*Reversed and remanded.*