ESTATE OF ANNABEL DYE GRAVES, DECEASED, ROBERT S. GRAVES, JR. AND RICHARD R. GRAVES, COEXECUTORS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 39100-87.          Filed June 19, 1989.

*D. French Slaughter III,* for the petitioner.
*Richard F. Stein,* for the respondent.

## OPINION

RUWE, *Judge:* This case is before the Court on petitioner's motion for summary judgment and respondent's cross-motion for summary judgment, filed pursuant to Rule 121. In his notice of deficiency, respondent determined a deficiency of $179,036.50 in the Federal estate tax of the Estate of Annabel Dye Graves (decedent). After concessions by petitioner, the issue for decision is whether a 1927 trust is includable in the gross estate of the decedent pursuant to sections 2036 or 2038.

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. *Shiosaki v. Commissioner,* 61 T.C. 861, 862 (1974). Summary judgment is not a substitute for a trial in that disputes over factual issues are not to be resolved in such proceedings. *Naftel v. Commissioner,* 85 T.C. 527, 529 (1985); *Espinoza v. Commissioner,* 78 T.C. 412, 416 (1982). Rule 121 provides that either party may move for a summary judgment upon all or any part of the legal issues in controversy so long as there is no genuine issue of material fact. Rule 121(b) provides that a decision shall be rendered if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law. The facts in this case are not in dispute.

The decedent was a resident of Syria, Virginia, when she died on December 31, 1983. Her executors were residents of Virginia on the date the petition was filed. On May 11,

1927, the decedent established a trust with a corpus of $100,000 by a trust agreement with the Central National Bank of Cleveland as trustee. The initial trust was funded with various assets, including stocks and bonds. These assets were sold, and the proceeds of the sales were used to purchase other assets. On June 30, 1984, (the alternative valuation date), the fair market value of the trust assets was $394,547.09.

Under the terms of the trust agreement, the decedent reserved the following powers. First, she reserved certain powers with respect to the trustee. She reserved the right to require the trustee to pay all or any portion of the trust income to her. She reserved the power to nominate a successor trust company trustee. This power was also reserved for her husband, Robert S. Graves, should he survive her. Mr. Graves predeceased the decedent. The decedent also reserved the power to direct the manner in which the trustee invested, reinvested, and handled the trust property, and the power to require the trustee to obtain written approval prior to selling, distributing, or reinvesting trust property. The trust agreement provided that "Should ROBERT S. GRAVES pre-decease the Grantor, then the Trustee, by and with the consent of the Grantor, shall invest and re-invest the principal Trust Estate, but in case of any disagreement the decision of the Trustee shall be conclusive." The decedent also reserved the power to approve the trustee's determination as to whether money or property coming into the trust would be treated as principal or income.

Secondly, the decedent reserved the right to distribute income and designate beneficiaries (other than herself and her husband). The trust agreement provided that the grantor reserved the right to "amend, alter or change the terms and conditions of this agreement only in respect to the distribution of income and the designation of beneficiaries (other than the Grantor and ROBERT S. GRAVES) hereunder." This power was released by a Release of Power of Appointment filed with the trustee on June 1, 1945.

The trust agreement expressly stated that neither the decedent nor her husband had the power to revoke the trust. The trust agreement stated:

It is especially agreed that the right to revoke said agreement, either in part or in whole, is not reserved to either the Grantor or ROBERT S. GRAVES * * * .

After the death of the decedent's husband, the net income of the trust was paid out to the decedent pursuant to her direction (except for $4,176.89 of income accrued in 1983, the year of her death). On March 6, 1979, in violation of the trust agreement, 310 shares of common stock were distributed from the principal of the trust to the decedent.

## *Section 2036(c)*

Section 2036(a) provides for the inclusion in the decedent's gross estate of the value of property which the decedent transferred while retaining the income for life. Section 2036(c)[2] provides that section 2036(a) does not apply to a transfer to a trust made before March 4, 1931. We have consistently held that a "transfer" for purposes of section 2036(c) occurs when a grantor places legal title to the trust corpus beyond his recall. See *Estate of Canfield v. Commissioner,* 34 T.C. 978 (1960), affd. 306 F.2d 1 (2d Cir. 1962); *Estate of Ridgway v. Commissioner,* 33 T.C. 1000 (1960), affd. 291 F.2d 257 (3d Cir. 1961); *Estate of Cuddihy v. Commissioner,* 32 T.C. 1171, 1176 (1959). See also *Pope v. United States,* 296 F. Supp. 17, 23 (S.D. Cal. 1968).

In the 1927 trust agreement, the decedent expressly relinquished her and her husband's power to revoke the trust in their favor. In so doing, she irrevocably transferred legal title to the trust, and made a section 2036(c) "transfer." The fact that the decedent reserved the power to designate beneficiaries does not require inclusion of the trust corpus in her gross estate. *Commissioner v. Estate of Ridgway,* 291 F.2d at 259.

Respondent argues that since appellate venue lies to the Fourth Circuit Court of Appeals, our rule in *Golsen v. Commissioner,* 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), requires that we follow the Fourth Circuit's decision in *Commissioner v. Estate of Talbott,* 403 F.2d 851 (4th Cir. 1968), revg. 48 T.C. 271 (1967). In *Golsen,* we held that "better judicial administration requires us to follow a

---

[2]Former sec. 2036(c) has been redesignated as sec. 2036(d) by sec. 10402(a) of the Omnibus Budget Reconciliation Act of 1987, Pub. L. 100-203, 101 Stat. 1330-431 (1987).

Court of Appeals decision which is *squarely in point* where appeal * * * lies to that Court of Appeals and to that court alone." *Golsen v. Commissioner,* 54 T.C. at 757. (Emphasis added. Fn. refs. omitted.)

In *Estate of Talbott,* the decedent executed a pre-1931 trust agreement which provided that income was payable to the decedent and her spouse for their joint lives. The terms of the trust agreement provided that the decedent could, during her husband's lifetime and with his consent, modify, alter, or *revoke* the trust in whole or in part. It further provided that the surviving life income beneficiary could modify, alter, or *revoke* with the consent of one remainderman. *Commissioner v. Estate of Talbott,* 403 F.2d at 854.

At issue in *Estate of Talbott* was whether section 2036(c)[3] was intended to exclude revocable, as well as irrevocable trusts established before March 4, 1931, from the settlor's gross estate. We held that the revocable transfer of legal title to the property was a "transfer" for purposes of section 2036(c) and that "the statutory provision does not refer to an absolute or completed transfer of the entire beneficial interest in the conveyed property." *Estate of Talbott v. Commissioner,* 48 T.C. at 276. The Court of Appeals for the Fourth Circuit reversed, holding that Congress intended in section 2036(c) to exclude only irrevocable pre-March 4, 1931, trusts from the operation of section 2036(a). *Commissioner v. Estate of Talbott,* 403 F.2d at 858. Because the trust agreement was expressly revocable in favor of the grantor after March 3, 1931, the court found the trust was includable in the decedent's gross estate. However, the court specifically limited its holding to cases in which the grantor of a pre-1931 trust had an express power to revoke the trust, as in *Smith v. United States,* 134 Ct. Cl. 136, 139 F. Supp. 305 (1956).

the Tax Court * * * has consistently expressed disagreement with the holding in *Smith,* although in each case, prior to the instant one, the Tax Court distinguished *Smith* on the ground that *Smith,* like the case at bar, concerned a trust revocable in favor of the settlor until after March 4, 1931, while the cases before the Tax Court concerned cases in which the transfer in trust was *irrevocable* prior to March 4, 1931, in the sense that the settlor could revoke the trust only for the benefit of others but not

[3]Sec. 2036(c) had been designated as sec. 2036(b) during the years in issue in *Commissioner v. Estate of Talbott,* 403 F.2d 851 (4th Cir. 1968), revg. 48 T.C. 271 (1967).

for himself. [*Commissioner v. Estate of Talbott*, 403 F.2d at 855. Emphasis added.]

The Court of Appeals concluded: "We express no view as to whether this distinction is valid." 403 F.2d at 855 n. 5.

The facts in the instant case are distinguishable from those in *Estate of Talbott.* In this case, the grantor had no express power to revoke the trust in her favor as did the grantor in *Estate of Talbott.* In fact, the trust agreement expressly relinquished the decedent's right to revoke the trust in her favor. *Estate of Talbott* cannot be considered "squarely on point" and it does not control the disposition of this case. *Golsen v. Commissioner, supra.* See *Fraternal Order of Police v. Commissioner,* 87 T.C. 747, 756-757 (1986), affd. 833 F.2d 717 (7th Cir. 1987); *Bridges v. Commissioner,* 64 T.C. 968, 973 (1975).

Respondent argues on brief that "the trust was not completely irrevocable because the grantor had expressly reserved the right to herself and her husband, if he survived her to alter, amend or change the terms and conditions of the trust agreement with respect to the distribution of income and the designation of beneficiaries." We recognize that there is some inconsistency in the statutory analysis contained in the previously cited cases. However, we are aware of no cases which have held that a transfer to a trust failed to qualify for section 2036(c) relief merely because the settlor retained the power to change the terms and conditions of the trust with respect to beneficiaries. Indeed, if retention of such powers with respect to beneficiaries' rights were held to vitiate a "transfer" within the meaning of the statute, the statutory purpose could not be carried out. The relief provided in section 2036(c) applies not only to a transfer in trust wherein the decedent retained the right to income, but also when the decedent retained "the right either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or income therefrom." Sec. 2036(a)(2).

In deciding that the requirements of section 2036(c) are satisfied, we adhere to the long-standing precedent in this Court and arrive at a conclusion that we believe is consistent with the purpose of the statute. Our conclusion is not inconsistent with that of the Fourth Circuit Court of

Appeals and is consistent with at least two other Circuit Courts of Appeals. The relief in question only applies to transfers that occurred over 58 years ago. Section 2036(c) was originally enacted because Congress wanted to eliminate the hardship that would be incurred by those who relied upon pre-March 4, 1931, precedent that was subsequently overruled. S. Rept. 831, 81st Cong., 1st Sess. (1949), 1949-2 C.B. (Part 2) 289, 293-294; *Commissioner v. Estate of Talbott,* 403 F.2d at 856, 858. It would be inconsistent with the original congressional purpose to overrule longstanding precedent at this late date.[4]

### Section 2038

Section 2038 applies to include in an estate the value of any interest a decedent transferred over which the decedent retained the power to alter, amend, or revoke on the date of the decedent's death. Whether or not the decedent exercised such a "power" is irrelevant in determining whether section 2038 applies. *Van Beuren v. McLoughlin,* 262 F.2d 315 (1st Cir. 1958).

In this case, when the decedent created the 1927 trust, she reserved for herself and her husband the right to amend, alter, or change the distribution of income and the designation of beneficiaries. In 1945, the grantor and her husband released these powers. At her death, the decedent had the power to distribute income to herself, to approve the trustee's determination of whether property received by the trust was principal or income, to appoint a successor institutional trustee, and to approve trust investments.

Respondent takes the position that the decedent retained certain powers over the trust which, when viewed cumulatively, were tantamount to the power to alter, amend, or revoke. Respondent seems to acknowledge that no single one of these powers, standing alone, would come within the purview of section 2038. We will discuss each of the powers upon which respondent relies.

---

[4]Respondent has maintained the position since 1953 that a "revocable" transfer to a trust is not a "transfer" within the meaning of sec. 2036(c). Rev. Rul. 53-277, 1953-2 C.B. 265. Even respondent concedes that the trust in the instant case was not completely revocable. We are unaware of any official announcements by respondent that he intended to use the term "revocable" in less than the full meaning of that term.

## 1. *Power Over Trust Income.*

While the decedent retained at her death the right to require distribution of income to herself, she had expressly relinquished the right to determine distribution of principal prior to her death. The decedent's power to require distribution of trust income to herself does not amount to a power to alter the trust corpus, and does not require inclusion of the trust corpus under section 2038. See *Commissioner v. Bridgeport City Trust Co.*, 124 F.2d 48 (2d Cir. 1941); *Van Beuren v. McLoughlin, supra* at 317; sec. 20.2038-1(a),[5] Estate Tax Regs.

## 2. *Power to Approve Designation of Receipts as Principal or Income.*

Subject to the decedent's approval, the trustee had the power to determine whether property received by the trust was to be treated as principal or income. The trustee was directed by the trust agreement to apportion receipts between income and principal "as it may deem just and equitable." If the trustee abused its discretion by classifying an obvious item of income as principal, it would be subject to equity court review. *Estate of Ford v. Commissioner*, 53 T.C. 114 (1969), affd. per curiam 450 F.2d 878 (2d Cir. 1971); *Estate of Budd v. Commissioner*, 49 T.C. 468, 475-476 (1968); *Estate of Pardee v. Commissioner*, 49 T.C. 140, 146-147 (1967). See *Buckle v. Marshall*, 176 Va. 139, 10 S.E.2d 506, 513 (1940). See also Va. Code Ann. sec. 55-253 (1986) (Uniform Principal and Income Act). To the extent the decedent had the power to approve the trustee's apportionment, she in effect made herself a fiduciary, and she was not at liberty to administer the trust for her own benefit or to ignore the rights of other beneficiaries. *Estate of King v. Commissioner*, 37 T.C. 973, 979-980 (1962); *Barnes v. Barnes*, 207 Va. 114, 148 S.E.2d 789, 793 (1966); *Somers v. Godwin*, 182 Va. 144, 27 S.E.2d 909, 913 (1943). See *Estate of Fiske v. Commissioner*, a Memorandum Opinion of this Court dated January 21, 1946; *Collins v. Hartford Accident & Indemn. Co.*, 178 Va. 501, 17 S.E.2d

---

[5]Sec. 20.2038-1(a), Estate Tax Regs., provides in pertinent part:

only the value of an interest in property subject to a power to which section 2038 applies is included in the decedent's gross estate under section 2038.

413, 418 (1941). This managerial power does not amount to a power to alter and does not require inclusion of the corpus in the gross estate.

3. *Power to Appoint Trustee.*

The decedent had a restricted power to appoint a trustee. She could not appoint herself as trustee; she was permitted by the trust agreement to appoint only an institution. Any successor trustee would have had a fiduciary duty to all the beneficiaries, and would not have been under the control of the decedent. See *United States v. Byrum,* 408 U.S. 125 (1972). The decedent's power to appoint a successor trustee, other than herself, does not require inclusion under section 2038. Sec. 20.2038-1(a)(3), Estate Tax Regs. Compare *Van Beuren v. McLoughlin,* 262 F.2d at 319.

4. *Power to Approve Trustee's Investment.*

At the time of her death, the decedent had reserved only the power to approve the trustee's investment decisions, and in the case of a disagreement, the trustee's decisions were conclusive. The decedent could not invest on behalf of the trust on her own initiative, and she could not cause the trustee to make an investment or prevent it from making an investment. The decedent was not able to shift the beneficial interest of the trust between the income beneficiaries and the remaindermen. When investing on behalf of the trust, the trustee was required to exercise its investment powers in good faith and in accordance with its fiduciary responsibilities, and it could not use its powers to favor any beneficiary to the detriment of the other beneficiaries. *Parsons v. Wysor,* 180 Va. 84, 21 S.E.2d 753, 755 (1942); *Buckle v. Marshall,* 10 S.E.2d at 512; Va. Code Ann. sec. 26-45.1 (1985). See *Estate of King v. Commissioner, supra* at 980. If the trustee failed to exercise its fiduciary responsibilities, the beneficiaries could enforce their rights in a court of equity. The decedent's power to require the trustee to obtain her consent prior to investing and reinvesting the principal of the corpus does not require inclusion.

Even if the decedent had the power to direct the investment of the trust property, this power would not

constitute a power to alter, amend, or revoke because she would have effectively been a trustee. As trustee, she would have had to act in good faith, in accordance with her fiduciary responsibility, and safeguard and conserve the trust principal. *Estate of Graham v. Commissioner,* 46 T.C. 415, 429 (1966); *Estate of King v. Commissioner, supra; Collins v. Hartford Accident & Indemn. Co., supra* at 418. See *United States v. Byrum, supra* at 133-134.[6]

Respondent argues that the decedent's powers, taken together, amount to the power to "alter" under section 2038. Based on our foregoing analysis of the decedent's powers, we cannot agree. At her death, the decedent's powers did not enable her to direct trust principal to the income beneficiaries or otherwise effect changes with respect to the trust corpus. She had no power to alter the trust corpus. The fact that the trust agreement was violated and property was distributed to the decedent on one occasion does not change this result. *Van Beuren v. McLoughlin, supra;* sec. 20.2038-1(a), Estate Tax Regs.

The only case cited by respondent for his approach to the section 2038 issue is *O'Malley v. United States,* 220 F. Supp. 30 (N.D. Ill. 1963), affd. 340 F.2d 930 (7th Cir. 1964), revd. 383 U.S. 627 (1966). In *O'Malley,* the decedent retained at his death the power to accumulate or distribute income of five irrevocable trusts created after 1931. The District Court held that the decedent's power to accumulate or distribute income amounted to a power to "alter" the trust principal, and that the value of the trust corpus, but not the accumulated income, was includable in the decedent's estate under sections 2036 and 2038.[7] *O'Malley v. United States, supra.* The Government appealed the accumulated income issue, and the Seventh Circuit Court of Appeals affirmed the District Court. *O'Malley v. United States,* 340 F.2d 930 (7th Cir. 1964). The Supreme Court, reversing the Court of Appeals, addressed only whether the accumulated income was includable in the decedent's estate under the predecessor of section 2036. "The District Court found the original corpus * * * includable in the estate, a

---

[6]See also *Chalmers v. Commissioner,* T. C. Memo. 1972-158.

[7]During the years in issue in *United States v. O'Malley,* 383 U.S. 627 (1966), sec. 2036(c) had been designated as sec. 811(c)(1)(B) and sec. 2038 had been designated as sec. 811(d).

holding not challenged in the Court of Appeals or here." *United States v. O'Malley,* 383 U.S. at 629. The Supreme Court's holding in *O'Malley* is not precedential here because the Court did not address whether the power to accumulate or distribute income requires inclusion of trust corpus under section 2038.

Respondent does not argue that the decedent's right to require the trustee to pay her all or any portion of the trust income is, standing alone, the same as the power to accumulate or distribute trust income, which the decedent retained in *O'Malley.* Indeed, if the right to direct that trust income be paid to the decedent would bring an otherwise irrevocable trust within the ambit of section 2038, the relief provided in 2036(c) for transfers made prior to March 4, 1931, would become meaningless since transfers exempted under section 2036(c) would always be included under section 2038. Respondent does however argue that the District Court's opinion in *O'Malley* supports his theory that the decedent's power to require that income be paid to her, coupled with her power to approve the designation of trust receipts as income or principal, brings the trust within section 2038. We disagree. *O'Malley* did not involve, and the District Court's opinion does not discuss, such a combination of powers.[8] As previously pointed out, the decedent had no right to mischaracterize items to the detriment of the other beneficiaries.

The trust principal is not includable in the decedent's estate. Petitioner's motion for summary judgment will be granted.

*An appropriate order will be issued.*

---

[8]In any event, we are not bound by the District Court's holding.