ESTATE OF ELEANOR P. BARTON, DECEASED, NATIONSBANK, EXECUTOR, AND BROCKENBROUGH LAMB, JR., EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Barton v. Commissioner
Docket No. 1474-92
United States Tax Court
T.C. Memo 1993-583; 1993 Tax Ct. Memo LEXIS 599; 66 T.C.M. (CCH) 1547; December 9, 1993, Filed *599 Decision will be entered under Rule 155. D created a revocable trust in which she alone retained until death both a power to terminate and a power to invade trust principal. D, on three occasions and within 3 years of death, directed the transfer of shares of stock from the trust to named donees. Held: The appointment by D of two co-trustees, who were granted administrative powers only, had no impact on D's powers to terminate the trust and invade trust principal; consequently, the co-trustees could not alter beneficial interests in the trust, and any transfers made by D during their joint tenure did not amount to a relinquishment by D of any of the powers contemplated by sec. 2038. Held, further, these stock transfers were accomplished by D in her individual capacity through her exercise of a power, which resulted in completed withdrawals that are not includable in D's gross estate, pursuant to sec. 2035(d)(2), I.R.C.
For petitioner: D. French Slaughter III. For respondent: Scott Anderson. KORNER
KORNER
MEMORANDUM OPINION KORNER, Judge: By notice of deficiency dated December 12, 1991, respondent determined a deficiency in petitioner's Federal estate tax of $ 79,785. *600 On the date the petition was filed, the residence of the estate was Richmond, Virginia. Petitioner is the Estate of Eleanor P. Barton (decedent). This case was submitted under Rule 122. The stipulation of facts and the attached exhibits are incorporated herein by this reference. All statutory references are to the Internal Revenue Code in effect for the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted. After concessions, [1] the sole issue for decision is whether gifts of stock transferred from decedent's revocable trust within 3 years of death are includable in her gross estate pursuant to sections 2035(d)(2) and 2038(a)(1). *601 Decedent created a revocable trust February 3, 1983, initially appointing herself as its sole trustee. Relevant terms of the trust agreement follow. Decedent, as grantor, retained the power to appoint a corporation and/or one or more individuals as successor trustees to serve concurrently with her or to succeed her at some designated future time. The trust contemplated that there would be a corporate trustee to administer the trust once the grantor ceased to serve unless the grantor herself had appointed one or more individuals as successor trustees. The children of the grantor could choose to appoint this contemplated corporate trustee to administer the trust in the event the grantor ceased to serve as trustee without so appointing. The children, if they chose to appoint a corporate trustee, also had the power to discharge and replace this trustee. Decedent retained the power to revoke any trustee appointment until the designated trustee began to serve, and once a trustee began to serve, the grantor retained the power of discharge. All trustees were granted the administrative powers delineated under title 64.1-57 of the Code of Virginia. Va. Code Ann. sec. 64.1-57 (Michie *602 1991). The powers in this section are similar to the administrative provisions already incorporated within the trust agreement. Paragraph (n) of section 64.1-57, supra, describes the general nature of these additional administrative powers as including all acts and things, which the trustee deems necessary or desirable for the proper management of the trust in the same manner and to the extent that an individual could or might do with respect to his own property, that remain consistent with the trust agreement. As of February 20, 1987, the grantor appointed Edith B. Sheerin and Eleanor B. Brown to serve as her co-trustees. Edith B. Sheerin and Eleanor B. Brown are decedent's daughters and were 56 and 50 years old, respectively, when they were appointed. Decedent, as grantor and trustee, alone, retained the power to terminate or amend, in whole or in part, the trust, as well as any of its amendments, by signed writing delivered to the trustee. Upon a termination, the terminated portion of the trust estate would be conveyed to the grantor or to whomever she directed. Net income was payable to the grantor during her lifetime unless she otherwise directed. The grantor *603 alone also retained an unrestricted power to invade trust principal by written direction to the trustee. Article II of the trust specifically provides: If at any time during the Grantor's life the trust estate contains income-producing assets, the Trustee shall pay all of the net income of the trust estate to the Grantor or as she may from time to time otherwise direct in writing and the Trustee shall pay any part of the principal of the trust estate as the Grantor may direct in writing. * * *
If, in the opinion of the trustee, the grantor became incapable of managing her affairs, the trustee had the power to utilize so much of the trust income and principal for the grantor's support, comfort, and welfare, and for any other purpose as the trustee found to be in the grantor's best interest. The trust also provided that upon decedent's death, the trust corpus which remained after the payment of estate debts would be distributed equally among each of the grantor's children should they survive or through their issue should they predecease the grantor. Beneficiaries of the trust specifically had no right to assign, alienate, or encumber any interest they might acquire in the *604 trust. Sovran Bank (Sovran), presently NationsBank, was the agent for decedent's trust. Decedent instructed Sovran on three occasions to make stock transfers from her trust principal to various named individuals. For each transaction, Sovran completed a schedule for each donee of securities distributed to be used for gift tax purposes. Each schedule indicated the number of shares transferred and the market value of the stock on the date of transfer. The bank then mailed the shares of stock to the designated donees and included the distribution schedule and a cover letter stating that the enclosed shares represented a gift from Eleanor P. Barton. These transfers occurred on December 23, 1985, December 11, 1986, and December 14, 1987, and the agent transferred 1285, 1200, and 2985 shares, respectively, of Chesapeake Corp. stock to the named donees. Five donees received shares whose indicated total fair market value exceeded the section 2503(b) annual $ 10,000 exclusion -- two in 1985 and three in 1987. Eleanor P. Barton died April 5, 1988. Her executors filed Form 706, United States Estate Tax Return, on January 4, 1989. The executors did not include the above stock transfers *605 as part of Schedule G, which requests a listing of transfers made within 3 years of death. The only entry on this schedule indicated transfers from the Eleanor P. Barton trust, valued at $ 2,504,079.73. It has been said that estate and gift tax provisions must be construed together. Estate of Sanford v. Commissioner, 308 U.S. 39, 44 (1939). Both tax the transfer of property, one by living donors and the other through death. Secs. 2001, 2501; sec. 25.0-1(b), Gift Tax Regs. The controversy in this case revolves around the interplay between sections 2035, 2038, and 2511. As decedent herein died after 1981, section 2035(d)(1) provides that gifts made within 3 years of death are generally no longer included as part of a decedent's gross estate. However, as provided in section 2035(d)(2), if a transfer is characterized as a section 2038 revocable transfer, this section operates to bring the transfer back into decedent's gross estate through section 2035(a). Section 2038 defines a transfer as revocable when a decedent makes a transfer, by trust or otherwise, but the enjoyment of such transfer remains subject at the date of his death to any change *606 by virtue of decedent's retention of a power to alter, amend, revoke, or terminate the transfer and, additionally, where such powers to alter, amend, revoke, or terminate are relinquished within 3 years of decedent's death. Sec. 2038. Respondent contends that decedent exercised her power to revoke the trust by directing transfers of stock to donees which were equivalent to the relinquishment of her power to revoke with respect to the assets withdrawn, and that such transfers to third parties from a revocable trust could only be achieved by the trust and not by decedent. Petitioner argues that the transfers herein were effected by decedent alone in her individual capacity, following the exercise of her power to make withdrawals as the grantor of the revocable trust and as the only trustee with the power to invade trust principal at will; therefore, these transfers are not a relinquishment of any power but simply withdrawals directed by the sole permissible distributee followed by direct completed gifts to designated donees and, as such, these gift transfers are not included in decedent's gross estate. Both parties herein rely on the same case as support for their respective *607 positions. One of them is misconstruing Estate of Jalkut v. Commissioner, 96 T.C. 675 (1991). The determination of whether transfers occurring within 3 years of death are to be included in a decedent's gross estate pursuant to section 2038 turns on the particular terms of the trust agreement, Estate of Jalkut v. Commissioner, supra at 684, and the specific powers granted therefrom. A grantor, as the sole trustee with the power to revoke a trust at will and the power to invade principal, can effectively complete gifts in an individual capacity during the period he remains the sole permissible distributee of trust assets as he retains beneficial ownership of the trust, and he alone has the power to withdraw such assets. Estate of Jalkut v. Commissioner, supra.
Respondent makes the argument that the act of exercising a power to revoke is equivalent to the relinquishment of that power. We disagree. Whether or not a decedent exercises the powers enumerated in section 2038 is irrelevant in determining whether section 2038 applies. Van Beuren v. McLoughlin, 262 F.2d 315, 316 (1st Cir. 1958). *608 The existence of the power to revoke is crucial, not its exercise. Estate of Carpousis v. Commissioner, T.C. Memo. 1974-258. The grantor in Estate of Jalkut v. Commissioner, supra, did not surrender his power of revocation by exercising his power to withdraw assets and transfer shares of stock irrevocably into trusts for the benefit of his children and grandchildren. However, upon the grantor's incapacitation, a trust provision was triggered that provided for the appointment of two trustees to succeed the grantor. Thereafter, these trustees alone held the power and the discretion to distribute principal and income as guided by their primary directive, that being the support, care, and welfare of the grantor and his descendants. This transfer of power from the grantor trustee to two successor trustees was a relinquishment of the grantor's power to revoke the trust as any subsequent transfers could only be made by the successor trustees and not by the grantor individually. Decedent herein retained for herself the power to terminate the trust, as well as the power to invade trust corpus, and she exercised these *609 powers by withdrawing stock from the trust and directing that transfers of the stock be made to named donees by Sovran, decedent's agent. Contrary to respondent's assertion, directing the withdrawal of trust assets herein does not amount to the relinquishment of any of decedent's retained powers; it is an exercise of decedent's power as grantor/trustee to invade the trust corpus at will, a power which she specifically retained for herself. To the extent that assets remained in the revocable trust at death, their value was properly includable in decedent's gross estate pursuant to section 2038. Also, decedent alone retained these powers until her death. Her appointment of two additional trustees had no effect on her power to terminate the trust and invade trust principal. These additional trustees acquired trust administration powers that could not be used to affect beneficial interests of the trust; therefore, decedent did not relinquish any of the powers contemplated by section 2038. Similarly, the grant of administrative powers in Estate of McTighe v. Commissioner, T.C. Memo. 1977-410, did not amount to a grant of a section 2038(a)(1) power. *610 Estate of Jalkut v. Commissioner, supra, controls the decision herein, and petitioner falls within its parameters. Since this Court's decision in Estate of Jalkut, Estate of Kisling v. Commissioner, T.C. Memo. 1993-262, has been issued. Estate of Kisling is distinguishable from the facts herein, as the grantor/trustee therein did not retain an express power to withdraw trust principal but reserved only a power to revoke. Further, gifts of irrevocable fractional beneficial interests in a revocable trust were viewed as an incomplete separation for withdrawal purposes. Petitioner herein has retained both a power to terminate the trust and a power to invade trust principal. Since we have determined that the transfers made by decedent herein qualify as withdrawals and are completed gifts, petitioner also is entitled to the section 2503(b) annual $ 10,000 per donee gift tax exclusion. To reflect the foregoing and concessions of the parties, Decision will be entered under Rule 155. Footnotes
1. Petitioner concedes respondent's reduction in the gross estate by $ 27,063 due to incorrect figures for income tax refund receivables; respondent's increase of $ 3,402 in the debts of decedent, specifically, State and Federal income tax liabilities; respondent's $ 1,482 reduction in the credit for tax on prior transfers due to an incorrect calculation; and respondent's increase in taxable gifts of $ 1,030 for the year 1977. However, any adjustments for gifts that may be required for the years 1985 through 1987 will be resolved indirectly by the decision herein.↩